HASTINGS REALTY CORPORATION, Appellant, v. TEXAS COMPANY, Respondent.

*September 9—October 5, 1965.*

For the appellant there were briefs by *Michael, Best & Friedrich,* attorneys, and *Frank J. Pelisek* and *David R. Olson* of counsel, all of Milwaukee, and oral argument by *Mr. Pelisek.*

For the respondent there was a brief by *Quarles, Herriott & Clemons,* attorneys, and *Neal E. Madisen* and *William A. Nohr* of counsel, all of Milwaukee, and oral argument by *Mr. Madisen.*

HEFFERNAN, J. The action of the state highway commission resulted in closing off access to the service station by way of West Forest Home avenue. Admittedly, except for a temporary encroachment, the state took no part of the leased property within the curbline. It is the contention, therefore, of Hastings, the landowner, that no part of the premises were taken, since irrespective of whether the con-

duct of the state was an eminent-domain taking, it was not a taking of the premises leased. Hastings contends that the land description set forth in the lease itself excludes the street area. The property as described in the lease runs to the center of West Forest Home avenue. However, the following language appears:

"reserving the north 60 feet and the southeasterly 60 feet for street purposes."

The area where access was possible to West Forest Home avenue was encompassed in the southeasterly 60 feet.

Hastings is apparently contending that since that portion was reserved for street purposes it was not leased to Texaco. The sentence following the clause reserving a portion of the property for street purposes makes it apparent that Hastings' position is untenable. That sentence reads:

"Together with all appurtenances thereto and all right, title and interest of lessor in and to any and all roads, streets and ways bounding the said premises."

This additional proviso makes it clear that the right to make use of the streets in the same manner that the lessor or owner had theretofore been able to do was part of the grant to the lessee. It clearly granted to Texaco the appurtenant rights in the abutting street. In view of repeated declarations of our court, the clause may have been superfluous. In any event, it makes clear the intention of the parties that the street area, subject to the use by the public was included in the premises. Our court in *Royal Transit, Inc., v. West Milwaukee* (1954), 266 Wis. 271, 277, 63 N. W. (2d) 62, quoted with approval 25 Am. Jur., Highways, p. 448, sec. 154:

" 'The right of access to and from a public highway is one of the incidents of the ownership *or occupancy* of land abutting thereon. Such right is appurtenant to the land, and

exists when the fee title to the way is in the public as well as when it is in private ownership.' "

In the concurring opinion to *Nick v. State Highway Comm.* (1961), 13 Wis. (2d) 511, 517, 109 N. W. (2d) 71, 111 N. W. (2d) 95, Mr. Justice CURRIE stated:

"The writer of this opinion believes . . . that highway-access rights are but one of a bundle of rights which appertain to a parcel of real estate."

We deem that to be a correct statement of the law.

In addition, the very nature of the lease agreement—an agreement for the rental of a service station—reasonably would contemplate the leasing of the appurtenant access rights. To hold otherwise would result in strained construction alien to the purpose of the lease and which neither party could have reasonably contemplated at the time of the agreement. Viewing the provisions of the lease and the entire transaction, we can only conclude that the street-access rights were a part of the bundle of rights appurtenant to and a part of the leased premises.

If there was a "taking" as contemplated in the lease, it was a taking of the premises.

Hastings contends, however, that even if access rights are to be considered as a part of the leased premises, there was no taking under eminent domain, and as set forth in the statement of facts, lease clause (6) permits termination when the premises are "taken for public use under right of eminent domain."

The appellant takes the position that the taking of access rights constitutes an exercise of the police power and not eminent domain and, hence, the exculpatory clause of the lease is inoperative.

We cannot agree. It is our opinion that this was a taking under eminent domain. It is admitted that the state highway commission did proceed under the eminent-domain

statute, sec. 84.09, Stats., which authorized the commission to "acquire by gift, devise, purchase or condemnation any lands for . . . improving . . . highways." None of these phrases enable the commission to acquire lands (except when granted by gift or devise) without payment. The same portion of the statute provides that if the land cannot be "purchased expeditiously for a price deemed reasonable by the commission, the commission may acquire the same by condemnation under ch. 32."

The "Jurisdictional Offer" which was submitted to Hastings is, of course, one of the initial steps in a condemnation proceeding.

Moreover, the Wisconsin statutes specifically provide that compensation shall be paid when there is a partial taking of premises, such as access rights under the power of eminent domain.

Sec. 32.09 (6) (b), Stats., provides that damages shall be paid for:

"Deprivation or restriction of existing right of access to highway from abutting land, provided that nothing herein shall operate to restrict the power of the state or any of its subdivisions or any municipality to deprive or restrict such access without compensation under any *duly authorized exercise* of the police power." (Emphasis supplied.)

It is clear, therefore, that the state highway commission is authorized to pay for access rights acquired by condemnation.

The appellant contends that if the proceeding brought by the highway commission is in fact eminent domain, the proceeding was brought by mistake—that properly the matter should have been handled under the police power. This contention is based upon the assumption that this court has held in similar cases that have been before it that the taking of an access right is *ipso facto* an exercise of the police pow-

er and is therefore not compensable. This is not what these cases stand for. They held that *if* access rights are acquired by the exercise of the police power, no compensation need be paid (unless all access is cut off).

A review of the cases referred to by the appellant will indicate that in each of them there was an express legislative authorization to act under the police power or that the police power was exercised only after holding legislatively authorized public hearings and administrative orders.

In *Carazalla v. State* (1955), 269 Wis. 593, 608, 70 N. W. (2d) 208, 71 N. W. (2d) 276, the court in its original decision would have allowed compensation for damages resulting from a highway relocation that cut off the plaintiffs from direct access. On rehearing the court vacated its mandate to set aside an instruction that would have permitted damages. The court said:

". . . in our original opinion we failed to perceive that any damages to the remaining lands due to the *exercise by the state of its police power in making the relocated highway a controlled-access highway are not recoverable.* . . . (Emphasis supplied.)

"If relocated U. S. Highway 51 had not been designated as a controlled-access highway . . . the rule announced in our former opinion would be applicable." *Carazalla v. State, supra,* at page 608c.

In *Nick v. State Highway Comm.* (1961), 13 Wis. (2d) 511, 513, 109 N. W. (2d) 71, 111 N. W. (2d) 95, Highway 30 had been declared to be a controlled-access highway under sec. 84.25, Stats. Mr. Justice BROWN pointed out:

"By sec. 84.25 (1), Stats., the legislature empowered the State Highway Commission to designate heavily traveled public highways as controlled-access highways in the interest of public safety, convenience, and the general welfare. Subject to judicial review, *when the commission so acts* in such

interest its action is an employment of the police power of the state." (Emphasis supplied.)

Relying on *Carazalla v. State, supra,* Mr. Justice BROWN wrote:

"The diminution in its value due to the exercise by the state of its police power in making Highway 30 a controlled-access highway is not recoverable . . . .

"The situation regarding the question of damages was frozen when the commission declared Highway 30 a controlled-access highway." *Nick v. State Highway Comm., supra,* at page 515.

In *Stefan Auto Body v. State Highway Comm.* (1963), 21 Wis. (2d) 363, 371, 124 N. W. (2d) 319, we again made it clear that the highway under consideration was of a controlled-access nature, in that case as the result of prior legislation expressly invoking the police power.

"The purpose of Interstate Highway 94 is not to serve the traveling public or abutters as a local road but to serve as a safe, efficient, and speedy means of transporting traffic from one state to another. What the defendant did in constructing Interstate Highway 94 as a freeway was in the exercise of its police power expressly authorized by sec. 84.29, Stats."

In *McKenna v. State Highway Comm.,* ante, p. 179, 135 N. W. (2d) 827, we reaffirmed the doctrine of the preceding cases, but again the highway in question had been established as a controlled-access road pursuant to the grant of police power given by sec. 84.25, Stats., and after a public hearing.

Each of these cases above is readily distinguishable from the case before us. In each of them the road was declared to be a controlled-access road prior to any acquisition of access rights. In the case before us the highway has not been declared to be access controlled, and it would be unlawful for the state highway commission to seize access

rights without compensation and without following the administrative procedure outlined in sec. 84.25, Stats.

This court in arriving at our decision in this case has taken judicial notice of the files of the state highway commission in regard to the administrative proceedings declaring the highways controlled access in the cases of *Carazalla, McKenna,* and *Stefan Auto Body.* It is apparent from these files that the state highway commission does in fact follow the administrative procedure of determining after a public hearing whether it is "necessary, in the interest of the public safety, convenience and the general welfare to prohibit entrance upon and departure from the highway or street except at places specially designated."

It is apparent that the legislation contemplates that the police power of the state shall be exercised only after such findings are made. Sec. 84.25, Stats., requires preliminary engineering studies and public hearings, which are to be held only after three weeks' notice by publication in the county where the highway is located. Witnesses at these hearings give testimony showing the necessity of limiting access to make travel on the road safer for the general public. It is also significant that, with the exception of interstate highways, only 1,500 miles of controlled-access highways are authorized by the legislature in the state—and then only in rural areas.

The record indicates that West Forest Home avenue has not been declared a controlled-access highway pursuant to law.

Accordingly, the cases cited are not analogous and the police power could not have been exercised as the appellant contemplates, and as it was in *Carazalla, Stefan Auto Body, Nick,* and *McKenna.*

It is evident that the highway commission may wish to limit access at particular points, even though it is not thought necessary to exercise the powers given under sec.

84.25, Stats., and even though a seizure under the police power cannot be justified. In such a case the legislature has wisely authorized the purchase of access rights as was done in this case. (Sec. 32.09 (6) (b).)

The appellant is in effect proposing, or at least asking us to declare, that a governmental agency has the authority to terminate private property rights without compensation and without a prior determination that the exercise of that power is necessary for the protection of the health and safety of the general public.

We have been shown no legislation that would permit such action by the highway commission, the cases that we have heretofore decided in this court do not stand for the proposition asserted, and as an original proposition it appears to have little to recommend it.

As this court said many years ago in the landmark case of *State ex rel. Carter v. Harper* (1923), 182 Wis. 148, 152, 196 N. W. 451:

"It is . . . accepted doctrine . . . that laws imposing restraints interfering with the use of property or personal liberty, in the absence of some public necessity therefor, cannot be sustained."

We agree with the learned trial judge that the access rights on West Forest Home avenue were taken by eminent domain.

Hastings contends, however, that Texaco could not terminate the lease even though the action of the highway commission constituted a taking under eminent domain. The pertinent portions of the lease clause in question provide:

"LESSEE'S RIGHT OF TERMINATION . . . . If, during the term of this lease, a part only of said premises be taken for public use under right of eminent domain, and if the remainder, in the opinion of the lessee, is not suitable for its

purpose, lessee, at its option, may cancel and terminate this lease, but if it shall not elect so to do, the monthly rental thereafter to be paid shall be reduced by an amount which bears the same ratio to that herein provided for as the area taken bears to the total area prior to such taking."

Its argument is that the termination clause provides that in lieu of termination the lessee can elect to remain on the premises and pay rent that will be reduced in proportion to the land area taken. From this, it concludes that land area must be taken. We do not find it necessary to grapple with this contention since the lessee did not elect to remain. It elected to terminate the lease. As stated above, we find the access rights to be appurtenant to the premises and a part of them. The taking of them made possible the invocation of the clause of the lease that provided:

". . . If, during the term of this lease, a part only of said premises be taken for public use under right of eminent domain, and if the remainder, in the opinion of the lessee, is not suitable for its purpose, lessee, at its option, may cancel and terminate this lease, . . ."

We conclude that the provision above, reasonably interpreted, means that the lessee, as it sees fit, can terminate the agreement or pay a reduced rental and continue in occupancy. Hastings' contention ignores the fact that these are alternatives and clearly separable. It also ignores the possibility that the alternative of termination was selected because of the unworkability of a reduced-rental formula in this instance.

As a final string to its bow, Hastings contends that, in any event, Texaco did not exercise its option to terminate in a reasonable time after the right to do so accrued, and is thus barred from doing so now.

This point was not litigated below nor was it raised by the pleadings in such a manner that the trial judge gave it

consideration. We have previously said that we will not consider for the first time on appeal factual elements not raised by the pleadings or brought to the attention of the lower court. *Herro v. Heating & Plumbing Finance Corp.* (1931), 206 Wis. 256, 239 N. W. 413.

In any event, the argument that the appellant urges us to consider—whether the option to terminate the lease was timely exercised—presents questions that can only be answered by speculation or facts dehors the record.

*Alpern v. Mayfair Markets* (1953), 118 Cal. App. (2d) 541, 547, 258 Pac. (2d) 7, 10, quoted by the appellant, alludes to a host of factual matters that must be before the court to determine reasonableness:

". . . conduct of the parties, delay to act, acquiescence in delay, whether the delay is for unfair purposes, the construction which the parties themselves placed upon their contract, and whether the optionee acts within such time as will work no injury to the other party."

Some of the most pertinent of the factual aspects listed above are not of record in this case. In the absence of the facts, which are essential in determining a concept like reasonableness, this court cannot resolve this question, and it cannot for the first time be raised on appeal.

*By the Court.*—Judgment affirmed.