COURT OF APPEALS
DECISION
DATED AND FILED

January 27, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP2146**

Cir. Ct. No. **2019CV1226**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

DEKK PROPERTY DEVELOPMENT, LLC,

   PLAINTIFF-RESPONDENT,

 V.

WISCONSIN DEPARTMENT OF TRANSPORTATION,

   DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Kenosha County: ANTHONY G. MILISAUSKAS, Judge. *Reversed and cause remanded with directions.*

Before Fitzpatrick, Graham, and Nashold, JJ.

¶1 FITZPATRICK, J. DEKK Property Development, LLC, ("DEKK") owns property near the intersection of State Trunk Highway 50 ("STH 50") and County Highway H ("CTH H") in Kenosha County. As part of a highway

improvement project for STH 50, the Wisconsin Department of Transportation ("DOT") has taken, through eminent domain procedures, a portion of DEKK's property located along CTH H.[1] The DOT further determined that it will close a driveway that connects DEKK's property to STH 50. The DOT compensated DEKK for the property it took along CTH H, but it does not propose any compensation for the closure of DEKK's driveway to STH 50.

¶2 DEKK brought an action in the Kenosha County Circuit Court against the DOT alleging that the DOT is required to provide compensation for the closure of DEKK's driveway to STH 50. The DOT moved for summary judgment arguing that: DEKK did not challenge the driveway closure under the proper procedural statute; and DEKK is not entitled to compensation for the driveway closure. The circuit court denied the DOT's motion and instead granted summary judgment to DEKK, concluding that DEKK brought its action under the proper procedural statute and DEKK must be compensated for the closure of the driveway because DEKK has "some sort of right of access to this driveway." The DOT appeals.[2]

¶3 We conclude that the circuit court erred in granting summary judgment in DEKK's favor. DEKK is not entitled to compensation for the closure

---

[1] The record does not disclose whether the taking along CTH H has been completed. But, the parties do not raise any issues regarding that taking, and we will assume that it has been completed.

[2] DEKK designated Kenosha County as the circuit court venue pursuant to WIS. STAT. § 801.50(3)(a) (2019-20). The DOT selected this district as the appellate venue pursuant to WIS. STAT. § 752.21(2).

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

of its driveway to STH 50 because the closure is based on the DOT's police powers and the terms of a 1961 indenture entered into by DEKK's predecessor in interest and the DOT. Because that issue is dispositive, we do not reach the question of whether DEKK's complaint was brought pursuant to the proper procedural statute. We therefore reverse the circuit court's order granting summary judgment in favor of DEKK and remand this matter to the circuit court to enter an order granting summary judgment in favor of the DOT.

## BACKGROUND

¶4　There is no dispute as to the following material facts.

¶5　DEKK owns approximately four acres of vacant land near the southeast corner of the intersection of STH 50 and CTH H in Kenosha County. The western boundary of DEKK's property abuts CTH H. DEKK does not own the property at the corner of that intersection.

¶6　As part of a current highway improvement project for STH 50, the DOT condemned, through eminent domain procedures, a portion of DEKK's land on the western boundary of its property that runs parallel to CTH H. Specifically, the DOT has taken 0.342 acres of DEKK's land in fee simple, 0.0001 acres as a permanent limited easement, and 0.13 acres as a temporary limited easement. The DOT did not seek to acquire any of DEKK's land along STH 50 for the current project. DEKK's property has two driveway connections—one to CTH H and one to STH 50. DEKK will retain its driveway access to CTH H as part of the current project.

¶7　An earlier highway improvement project on STH 50 is pertinent to this appeal. As part of that project, a prior owner of DEKK's property (who we

will refer to as the "grantor" or "predecessor in interest") executed an indenture[3] in 1961. Pursuant to this indenture, for a payment of $10,500, DEKK's predecessor in interest conveyed "Fee Title" to Kenosha County, as agent for the DOT,[4] for 0.17 acres of land. In addition, the grantor conveyed to the DOT "the Right of Access, including all existing, future or potential common law or statutory easements or rights of access between any traveled way of S.T.H. 50, and the … land of the owner [described in the indenture] it abuts upon said highway." Further, in what we refer to as the "driveway reservation" of the indenture, the grantor reserved a driveway connection to STH 50:

> Except there is reserved the right of access to said highway by means of one restricted driveway same to be used only for barber shop purposes for the term of fifteen years from the date of this conveyance and then to become a private driveway conforming to the regulations of the State Highway Commission. Said driveway to be constructed with its eastern limits along the east line of the owner's property line in conformance with State Highway Commission policy.[5]

The basis for the payment of $10,500 was further explained in the indenture: "The consideration stated herein is payment in full for the conveyance of property

---

[3] The parties do not dispute that, in these circumstances, the indenture is an instrument that is the functional equivalent of a deed.

[4] The parties do not dispute that, at the time, Kenosha County was acting as agent for the State Highway Commission. The DOT was created in 1967, incorporating the then-existing State Highway Commission into the DOT's organizational structure. *See* 1967 Wis. Laws, ch. 327, § 13 (creating WIS. STAT. § 15.46 and WIS. STAT. § 15.463 (1966-67) (repealed 1977)). Accordingly, for convenience, we generally refer to the DOT rather than the Highway Commission or Kenosha County when referencing the indenture.

[5] The parties agree that "said highway" referred to in the driveway reservation is STH 50. In addition, both parties agree that the 1961 indenture's references to the "regulations of the State Highway Commission" and the "State Highway Commission policy" should be understood as referring to the current regulations and policy of the DOT.

described herein and includes full compensation for items of damage set forth in Chapter 32, Wisconsin Statutes, assuming the completion of the improvements contemplated by the relocation order or orders upon which this conveyance is based."[6]

¶8 For the current project, the DOT commissioned an appraisal of the property that would be acquired from DEKK's land abutting CTH H. The appraisal noted that DEKK's property has a driveway connection to STH 50, but stated that the driveway to STH 50 would be closed and that no amount was included in the appraisal for that driveway closure.

¶9 DEKK inquired about the STH 50 driveway closure described in the appraisal. A DOT real estate specialist explained that the right of access between the DEKK property and STH 50 was acquired by the DOT through the 1961 indenture. The specialist also stated that DEKK would not be compensated for the closure of the driveway to STH 50 because that driveway would not be closed as part of the eminent domain taking of a portion of DEKK's property abutting CTH H. Rather, the DOT would close that driveway through its police power and, as such, that action would be "non-compensable."

¶10 Pursuant to WIS. STAT. § 32.05(3), the DOT issued a jurisdictional offer to purchase the portion of DEKK's property along CTH H as well as an "Award of Damages" for that taking. The jurisdictional offer and award set forth the amounts for the taking of DEKK's property along CTH H in fee simple, as a

---

[6] "As a general rule, condemnation powers in Wisconsin are set out in WIS. STAT. ch. 32." *Waller v. American Transmission Co., LLC*, 2013 WI 77, ¶56, 350 Wis. 2d 242, 833 N.W.2d 764 (footnote omitted).

permanent limited easement, and as a temporary limited easement, but did not include any amount for the closure of the driveway connecting DEKK's land to STH 50.

¶11 DEKK filed a complaint in the circuit court claiming that the DOT does not have the authority to close DEKK's driveway to STH 50 without compensating DEKK for the closure through eminent domain procedures. DEKK's complaint was based on the procedure set forth in WIS. STAT. § 32.05(5).[7] The complaint alleged that the DOT did not acquire DEKK's right of access to STH 50 through the 1961 indenture. Accordingly, DEKK sought a declaration from the court that the "DOT has no power or right under the police power" to close DEKK's driveway to STH 50.

¶12 The DOT filed a motion for summary judgment arguing that it was entitled to judgment as a matter of law for two principal reasons: (1) DEKK cannot properly contest the DOT's closure of DEKK's STH 50 driveway under WIS. STAT. § 32.05(5); and (2) the DOT has the authority to close DEKK's driveway to STH 50, without compensation to DEKK, based on the terms of the

---

[7] WISCONSIN STAT. § 32.05(5) provides in relevant part:

> COURT ACTION TO CONTEST RIGHT OF CONDEMNATION.
> If an owner desires to contest the right of the condemnor to condemn the property described in the jurisdictional offer, for any reason other than that the amount of compensation offered is inadequate, the owner may … commence an action in the circuit court of the county wherein the property is located, naming the condemnor as defendant. Such action shall be the only manner in which any issue other than the amount of just compensation, or other than proceedings to perfect title under [WIS. STAT. §§] 32.11 and 32.12, may be raised pertaining to the condemnation of the property described in the jurisdictional offer.

6

1961 indenture and police power granted to the DOT. DEKK responded in the circuit court and requested that summary judgment be granted in its favor on both issues.

¶13 During summary judgment briefing, the DOT sent a letter to DEKK providing notice that the DOT was acting to close DEKK's driveway to STH 50 and the closure would be done pursuant to WIS. ADMIN. CODE § TRANS 231.03(2) (Nov. 2021).[8] The DOT explained in the letter that, if DEKK wished to contest the driveway removal, then DEKK should submit an "objection letter" within 30 days. Rather than submit such a letter, DEKK filed a motion in the circuit court requesting a temporary restraining order and temporary injunction prohibiting the DOT from closing DEKK's driveway access to STH 50.

¶14 The circuit court granted summary judgment in DEKK's favor and denied the DOT's motion. The court concluded that DEKK properly brought its claim under WIS. STAT. § 32.05(5). The court further concluded that DEKK possessed the right of access to the STH 50 driveway and must be compensated for its taking:

> So it's quite clear here that the plaintiff had some sort of right of access to this driveway. It is a reserved right, but it's still a right of having this access on Highway 50. So if we look at the issues here, if the

---

[8] WISCONSIN ADMIN. CODE § TRANS 231.03(2) provides in full: "The number of driveways permitted serving a single property frontage along a state trunk highway shall be the minimum deemed necessary by the department for reasonable service to the property without undue impairment of safety, convenience, and utility of the highway."

All subsequent references to WIS. ADMIN. CODE ch. TRANS 231 are to the November 2021 register date unless otherwise indicated.

> plaintiff has this reserve right, I think there should be just compensation.[9]

The court also granted DEKK's motion for a temporary injunction and prohibited the DOT from closing DEKK's driveway to STH 50 until the DOT exercised its right of appeal.

¶15  The DOT appeals the circuit court's order granting summary judgment to DEKK.

¶16  We mention other undisputed material facts in the following discussion.

## DISCUSSION

¶17  The DOT argues that the circuit court erred in denying its motion for summary judgment and granting summary judgment in DEKK's favor. Specifically, the DOT contends that:  (1) DEKK is not entitled to compensation for the DOT's closing of DEKK's driveway to STH 50 based on the terms of the 1961 indenture and because the closing of the driveway is done through DOT's police power authority rather than through the DOT's eminent domain authority; and (2) DEKK improperly raised the claim in its complaint through a "right-to-take" action under WIS. STAT. § 32.05(5).  For its part, DEKK argues that the DOT cannot close its driveway to STH 50 without paying compensation to DEKK, and its right-to-take action is the proper procedural vehicle for its claim. Because we agree with the DOT's position regarding the first issue and that is

---

9 After this court identified an error in the original written summary judgment order, the circuit court entered an amended summary judgment order.  The amended order clarified that the DOT was aggrieved by the court's summary judgment ruling.

dispositive, we do not address the second issue regarding the procedural statute DEKK relies on.

# I. Standard of Review and Governing Principles on Summary Judgment, Interpretation of Statutes and Regulations, and Government Restrictions of Access to Property.

¶18　We begin by setting forth our standard of review and governing principles regarding summary judgment and interpretation of statutes and regulations.

## A. Standard of Review, Summary Judgment, and Interpreting Statutes and Regulations.

¶19　We review a circuit court's decision to grant summary judgment de novo, applying the same methodology as the circuit court. *Fromm v. Village of Lake Delton*, 2014 WI App 47, ¶11, 354 Wis. 2d 30, 847 N.W.2d 845 (citing *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987)). On summary judgment, the moving party is entitled to judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2); *see Bank of N.Y. Mellon v. Klomsten*, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364.

¶20　This case requires us to interpret statutes and administrative regulations. We review the application of statutes and administrative regulations to undisputed facts de novo. *American Fam. Mut. Ins. Co. v. Haas*, 2017 WI App 83, ¶4, 379 Wis. 2d 336, 904 N.W.2d 830 (citing *DOR v. Menasha Corp.*,

2008 WI 88, ¶44, 311 Wis. 2d 579, 754 N.W.2d 95). When interpreting statutes, Wisconsin courts begin "with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*; *see* WIS. STAT. § 990.01(1). When interpreting administrative regulations, we use the same rules of interpretation as we apply to statutes. *Menasha Corp.*, 311 Wis. 2d 579, ¶45.

¶21 Because it informs our discussion of the parties' arguments, we next consider governmental authority to take or restrict a property owner's access to a state highway. The government may take that access using eminent domain procedures set forth in WIS. STAT. ch. 32 or, depending on the circumstances, the government may do so by exercising its police power.

## B. Eminent Domain Taking.

¶22 The DOT has the authority to take a property owner's access rights to a state highway by exercising its power of eminent domain. *See* WIS. STAT. § 84.09(2). WISCONSIN STAT. § 32.09(6) sets forth the compensation that a condemnor must pay for a partial taking of property, and § 32.09(6)(b) specifically requires that the condemnor consider the "[d]eprivation or restriction of existing right of access to highway from abutting land." Therefore, the DOT must compensate a property owner "when there is a partial taking of premises, such as access rights under the power of eminent domain." *National Auto Truckstops, Inc. v. DOT*, 2003 WI 95, ¶15, 263 Wis. 2d 649, 665 N.W.2d 198 (citation omitted); *Narloch v. DOT, Div. of Highways, Div. II*, 115 Wis. 2d 419, 431, 340 N.W.2d 542 (1983) ("[W]hen a partial taking occurs, the loss of an existing right

of access is an item of loss or damage to the remaining property that is compensable.").

### C. Police Power.

¶23 The government may also limit a property owner's use of the owner's property by exercising its police power authority. *See United Am., LLC v. DOT*, 2021 WI 44, ¶11 n.6, 397 Wis. 2d 42, 959 N.W.2d 317 ("The 'police power' is the government's authority to act 'in the interest of public safety, convenience[,] and the general welfare.'" (citation omitted)). Generally, "a landowner cannot recover for consequential injuries, including a diminution in property value, resulting from the exercise of state police power." *Id.*, ¶11 (quoting *Nick v. State Highway Comm'n*, 13 Wis. 2d 511, 513-14, 109 N.W.2d 71 (1961)).[10]

### D. Government Restrictions of Access to Property.

¶24 "The right of access to and from a public highway is one of the incidents of the ownership or occupancy of land abutting thereon." *118th St. Kenosha, LLC v. DOT*, 2014 WI 125, ¶30, 359 Wis. 2d 30, 856 N.W.2d 486

---

[10] The DOT may be required to compensate a property owner if its use of police power resulted in a "regulatory taking." *See Brenner v. New Richmond Reg'l Airport Comm'n*, 2012 WI 98, ¶41, 343 Wis. 2d 320, 816 N.W.2d 291. A regulatory taking occurs when "there is a legally imposed restriction upon the property's use" that denies the property owner "all or substantially all practical uses of a property." *Id.*, ¶¶44-45. For example, a regulatory taking may occur if government action results in "denying all access to a parcel of land." *Surety Sav. & Loan Ass'n v. DOT, Div. of Highways*, 54 Wis. 2d 438, 443, 195 N.W.2d 464 (1972). Thus, for a restriction or deprivation of highway access to result in a "regulatory taking," the property owner must be left without any "reasonable access" to the property. *National Auto Truckstops, Inc. v. DOT*, 2003 WI 95, ¶19, 263 Wis. 2d 649, 665 N.W.2d 198 ("[D]eprivation of direct access to a highway does not constitute a taking of property provided *reasonable access* remains." (citation omitted)). DEKK does not contend that the DOT's actions in this case constitute a regulatory taking.

(quoting *Hastings Realty Corp. v. Texas Co.*, 28 Wis. 2d 305, 310, 137 N.W.2d 79 (1965)).  However, the right of access to a property "involves only the right to enter and leave the property without being forced to trespass across the land of another."  *Surety Sav. & Loan v. DOT, Div. of Highways*, 54 Wis. 2d 438, 444,195 N.W.2d 464 (1972).  In addition, the right of access "does not include any right … to have access at any particular point on the boundary lines of the property." *Id.*

¶25    One of the DOT's police powers is its authority under WIS. STAT. § 86.07(2)[11] and WIS. ADMIN. CODE ch. TRANS 231 to regulate driveway access between a property and a state trunk highway.  *National Auto Truckstops*, 263 Wis. 2d 649, ¶17 ("This section [§ 86.07(2) and WIS. ADMIN. CODE § TRANS 231.01] does not deny the right of access but regulates access in the interests of public safety and convenience." (citation omitted)); *Mommsen v. Schueller*, 228 Wis. 2d 627, 638, 599 N.W.2d 21 (Ct. App. 1999) ("The supreme court has held § 86.07(2), STATS., can be used to regulate access in the interests of public safety and convenience.").

¶26    WISCONSIN ADMIN. CODE ch. TRANS 231 was promulgated by the DOT pursuant to its authority under WIS. STAT. § 86.07(2) for "placing,

---

[11] WISCONSIN STAT. § 86.07(2)(a) provides, in relevant part:

> [N]o person shall make any excavation or fill or install any culvert or make any other alteration in any highway or in any manner disturb any highway or bridge without a permit therefor from the highway authority maintaining the highway.… Nothing herein shall abridge the right of the department … to make such additional rules, regulations and conditions not inconsistent herewith as may be deemed necessary and proper for the preservation of highways, or for the safety of the public, and to make the granting of any such permit conditional thereon.

constructing or altering driveways for movement of traffic between state trunk highways and abutting property." WIS. ADMIN. CODE § TRANS 231.01. WISCONSIN ADMIN. CODE § TRANS 231.03(2) states that "[t]he number of driveways permitted serving a single property frontage along a state trunk highway shall be the minimum deemed necessary by the [DOT] for reasonable service to the property without undue impairment of safety, convenience, and utility of the highway." Sec. TRANS 231.03(2). Accordingly, by requiring that the number of driveways serving a property along a state trunk highway be the "minimum deemed necessary by the [DOT]," this regulation necessarily authorizes the DOT to remove a property owner's entire driveway access to a highway by setting the minimum number of driveways at zero. *Id.*

¶27 Further, and pertinent to this appeal, when the DOT acts pursuant to its police power authority to regulate driveway access under WIS. STAT. § 86.07(2) or WISCONSIN ADMIN. CODE ch. TRANS 231, the property owner is (with the exception of a regulatory taking of all reasonable access to the property as already mentioned) not entitled to compensation for any deprivation or restriction of the right of access. *See* WIS. STAT. § 32.09(6)(b) ("[N]othing herein shall operate to restrict the power of the state or any of its subdivisions or any municipality to deprive or restrict [an existing right of] access without compensation under any duly authorized exercise of the police power.").

## II. Analysis.

¶28 Mindful of those principles, we next consider the terms of the 1961 indenture. The scope of DEKK's relinquishment of its access rights to STH 50 to the DOT, and the driveway to STH 50 reserved in that indenture, informs our determination of whether the DOT's driveway closure constitutes an eminent

13

domain taking or, instead, is an exercise of the DOT's police power. As discussed, if the closure is accomplished pursuant to the DOT's police power, DEKK is not entitled to compensation for the closure of the driveway.

¶29 This issue requires us to construe the language of the unambiguous 1961 indenture. The construction of an unambiguous indenture or deed presents a question of law. *Konneker v. Romano*, 2010 WI 65, ¶23, 326 Wis. 2d 268, 785 N.W.2d 432; *see also* WIS. STAT. § 706.10(5).

¶30 The DOT argues that it took all of the grantor's rights of access including "all existing, future, or potential common law or statutory easements or rights of access" to STH 50 through the 1961 indenture. Additionally, the DOT contends that the driveway reservation only allowed DEKK's predecessor in interest (and, therefore, DEKK) the ability to have "one driveway, in one specified location, subject to DOT's own regulations." DEKK responds that the driveway reservation gives it a "full" or "deeded right of access" to STH 50.

¶31 For the following reasons, we conclude that the 1961 indenture transferred from the grantor to the DOT all rights of access to STH 50. The driveway reservation in the 1961 indenture did not retain for DEKK a "full" or "deeded" right of access to STH 50. Rather, the indenture reserved only a driveway connection to STH 50 at one particular point subject to use restrictions and revocation, pursuant to the DOT's regulations.

**A. Terms of the 1961 Indenture and Application of Those Terms.**

¶32 The indenture contains the following material terms, some of which we repeat from the Background section. The "grantor," for $10,500, conveyed to the DOT "Fee Title" to a described "tract of land" about .17 acres in size that

abuts STH 50. In addition, the grantor conveyed to the DOT: "Also, the Right of Access, including all existing, future or potential common law or statutory easements or rights of access between any traveled way of S.T.H. 50, and the … land of the owner [described in the indenture] it abuts upon said highway."

¶33　The indenture further contains the driveway reservation:

> Except there is reserved the right of access to said highway by means of one restricted driveway same to be used only for barber shop purposes for the term of fifteen years from the date of this conveyance and then to become a private driveway conforming to the regulations of the State Highway Commission. Said driveway to be constructed with its eastern limits along the east line of the owner's property line in conformance with State Highway Commission policy.

The terms of the driveway reservation "reserved" a "right of access to [STH 50]." But the reservation then significantly qualified and limited that access. The "means" of access is solely through what the indenture refers to as "one restricted driveway." The restrictions on that driveway are that the driveway is "to be used only for" the following. From 1961 to 1976, the driveway was to be used for "barber shop purposes." After that, it is "then to become a private driveway," and the driveway must "conform[] to the regulations of the [DOT]."[12]

¶34　From those terms, it is established that the grantor transferred "all Rights of Access" from this parcel of land to the DOT. All that DEKK's predecessor in interest reserved (and what DEKK had transferred to it later) is a "private driveway" in one specific location that must conform to the regulations of

---

[12] The parties do not dispute that the current location of the driveway is consistent with the terms of the driveway reservation.

the DOT. More particularly, the grantor conveyed to the DOT the authority to regulate DEKK's reserved driveway pursuant to DOT regulations, including the right to close that driveway if it unduly impairs the "safety, convenience, and utility of the highway." *See* WIS. ADMIN. CODE § TRANS 231.03(2). And the DOT has now made the determination to close the driveway for those reasons.

¶35    DEKK relies on our supreme court's opinion in *Narloch* in an attempt to support its argument that, in effect, the driveway reservation gives DEKK common law and statutory rights of access to STH 50. On the contrary, our conclusion about the meaning of the 1961 indenture is supported by our supreme court's analysis in *Narloch*. In that case, through eminent domain procedures the DOT took portions of land from three separate property owners as part of a state highway relocation project. *Narloch*, 115 Wis. 2d at 422. Germane to this appeal, and using language similar to that in the indenture in the present case, the DOT took "all existing, future or potential common law or statutory easements or rights of access" between the highway and the properties, reserving one or two specific access points per property. *Id.* at 424-26. On appeal, an issue was whether the DOT took all of the property owners' "right of access" under WIS. STAT. § 32.09(6)(b).

¶36    Our supreme court held that, by taking "all existing, future or potential common law or statutory easements or rights of access" between the highway and the properties, the DOT took *all* of the property owners' rights of access to the highway, even though the owners retained specific access points. *Id.* at 432. By taking "all rights of access," the DOT also took the property owners' "right to apply for future permits under [WIS. STAT. §] 86.07(2), and [WIS. ADMIN. CODE ch. TRANS 231], and [the property owners' right] to be judged on the criteria contained in those provisions." *Id.* The court stated that, if the property owners

16

were to apply for permits under § 86.07(2), the DOT could "summarily deny such requests without determining if the criteria for obtaining the permits were satisfied because … the state has already taken 'all existing, future or potential … rights of access.'" *Id.*

¶37    The following flows from the facts and holdings in *Narloch* and establishes that *Narloch* does not support DEKK's argument.  When the DOT was conveyed "all Access Rights [to STH 50], including all existing, future or potential common law or statutory easements or rights of access" in 1961, the DOT took the grantor's "existing right of access" that is compensable under WIS. STAT. § 32.09(6)(b) and, as discussed, the grantor was paid for those rights.  Even though the grantor retained the ability to access STH 50 at one specific point, *Narloch* makes clear that the DOT took—and provided compensation for—*all* of the grantor's rights of access.  *See id.*  Additionally, *Narloch* demonstrates that the DOT in 1961 was conveyed the grantor's "right to apply for future permits under [WIS. STAT. §] 86.07(2), and [WIS. ADMIN. CODE ch. TRANS 231]," and the DOT was conveyed the grantor's right "to be judged on the criteria contained in [§ 86.07(2) and ch. TRANS 231]."  *See id.*  As a result, the DOT has exercised its authority granted through the driveway reservation to remove DEKK's driveway access under § 86.07(2) and ch. TRANS 231.

¶38    DEKK argues that the "right of access" reserved in the driveway reservation is not subject to conditions such as permitting or DOT regulations because the indenture contains no language regarding the ability to apply for a driveway permit.  However, DEKK ignores the indenture's language that subjects the reserved driveway to "the regulations of the [DOT]."  DEKK does not dispute that these regulations include WIS. ADMIN. CODE § TRANS 231.03 and related DOT driveway regulations.  As just discussed, the indenture's reference to these

17

regulations gives the DOT the authority to remove DEKK's driveway access to STH 50. The applicability of § TRANS 231.03(2) to the DOT's closure of DEKK's driveway is not undermined by the absence of a driveway permit issued under WIS. STAT. § 86.07(2). Rather, the DOT has the authority to remove DEKK's driveway without exercising its permitting authority under § 86.07(2) because the DOT took DEKK's "right to apply for future permits under sec. 86.07(2), and [WIS. ADMIN. CODE ch. TRANS 231], and to be judged on the criteria contained in those provisions." *See Narloch*, 115 Wis. 2d at 432. Even if DEKK were to apply for a permit, the DOT could summarily deny that request without determining if the criteria for obtaining such a permit were satisfied. *See id.* Thus, the lack of language in the indenture regarding a driveway permit does not alter the conclusion that DEKK does not possess the right of access to STH 50.

¶39    It then follows that the grantor did not, as DEKK asserts, reserve a "full" statutory or common law right of access through the driveway reservation. Rather, the reservation is a driveway connection to STH 50 at one particular point, subject to revocation and closure under WIS. ADMIN. CODE § TRANS 231.03(2). Further, DEKK does not possess a "deeded" right of access to the driveway from the DOT, as DEKK asserts, because the indenture does not convey any interests or access rights from the DOT to the grantor. Rather, the indenture conveyed land and access rights from the grantor to the DOT, reserving only the qualified and "restricted" ability to access STH 50 set forth in the driveway reservation.

¶40    In sum, the DOT was granted—and provided compensation for— "all … Rights of Access" between DEKK's property and STH 50 through the 1961 indenture. The single reserved driveway is subject to limitations and conditions, including a DOT regulation that authorizes the DOT to close DEKK's

18

driveway based on the DOT's determination regarding safety, convenience, and utility.

## B. DEKK's Remaining Arguments.

¶41    DEKK advances other arguments regarding the meaning of the terms of the indenture, but we reject each for the following reasons.

¶42    First, DEKK argues that our interpretation of the indenture renders the word "right" in the driveway reservation superfluous.  This argument is unavailing.  Our interpretation gives meaning to all words in the driveway reservation by recognizing that the reserved right of access was limited in use and location, and is subject to the "regulations of the [DOT]" as previously discussed. *See Sonday v. Dave Kohel Agency, Inc.*, 2006 WI 92, ¶21, 293 Wis. 2d 458, 718 N.W.2d 631 ("We interpret a contract to give 'reasonable meaning to each provision and without rendering any portion superfluous.'").

¶43    Second, DEKK argues that the DOT's regulations under WIS. ADMIN. CODE ch. TRANS 231 do not authorize the DOT to "deny the right to access," but only to regulate the physical attributes or characteristics of driveways. For this proposition, DEKK relies on one sentence in *Bear v. Kenosha Cnty.*, 22 Wis. 2d 92, 125 N.W.2d 375 (1963).  In *Bear*, through eminent domain procedures, Kenosha County took a portion of the Bears' property that abutted a state trunk highway as well as rights of access to that highway, with the exception of two reserved driveways. *Bear*, 22 Wis. 2d at 94.  The issue in *Bear* concerned the amount of compensation owed for that taking. *Id.* at 93.  On appeal, our supreme court briefly discussed WIS. ADMIN. CODE § HY 31.03(2) (Nov. 1963)— the predecessor to WIS. ADMIN. CODE § TRANS 231.03(2). *Id.* at 95-96.  With respect to § HY 31.03(2), DEKK relies on one statement of the court that "[t]his

section does not deny the right to access but regulates access in the interests of public safety and convenience." *Id.* at 96.

¶44    Our conclusion that WIS. ADMIN. CODE § TRANS 231.03(2) authorizes the DOT to remove driveway access to DEKK's property is unaltered by *Bear*.  The relied-on sentence in *Bear* means (at most for DEKK) that the DOT's authority to regulate driveways abutting state highways under § TRANS 231.03(2) does not by itself extinguish a property owner's right of compensation for a loss of access to a state highway during the eminent domain process when the DOT initially takes those access rights.  Applied to this case, *Bear*'s statement means only that, in 1961, the Highway Commission did not have the authority to take the access rights of DEKK's predecessor-in-interest without compensation under the eminent domain procedures in WIS. STAT. ch. 32.  That changed in 1961 for DEKK's predecessor-in-interest (and, ultimately, DEKK) based on the terms of the indenture.  Here, as already discussed and unlike the facts of *Bear*, the DOT took, and paid for, the grantor's right of access to STH 50 in 1961.  Further, and again contrary to the facts in *Bear*, DEKK has only a "restricted driveway" that must conform to DOT regulations and the DOT's determinations regarding public safety and convenience.  For those reasons, DEKK's argument fails.

¶45    Third, DEKK contends that the DOT "paid an amount of compensation to [the prior property owners] based on the fact that DOT did not take *all* the STH 50 access," and, from that, it follows that the DOT must compensate DEKK for the driveway closure.  DEKK does not point to any facts in the record indicating that the amount paid by the DOT under the 1961 indenture was intended to provide compensation for only *some* "existing, future or potential common law or statutory" access rights as DEKK asserts.

¶46    Fourth, DEKK relies on the following assertion:    "Wisconsin law has made clear that if a party wants to retain an interest in property, it must expressly do so in the document of conveyance."    *Wynhoff v. Vogt*, 2000 WI App 57, ¶17, 233 Wis. 2d 673, 608 N.W.2d 400.    That does not assist DEKK's position because, in these circumstances, the grantor (not the DOT) reserved driveway access and, accordingly, was the party who was required to "expressly" state what driveway access was reserved.    DEKK's predecessor-in-interest did not reserve driveway access to STH 50 beyond what is in the indenture, and DEKK is bound by the terms of that instrument.[13]

¶47    Fifth, DEKK contends that the indenture did not convey to the DOT any right of access to STH 50 because a chart of "Schedule of Lands and Interests Required" in a Highway Commission document entitled "Plat of Right of Way Required" indicates that the Highway Commission acquired from DEKK's predecessor-in-interest "fee" and "L.H.E."    DEKK interprets those initials as

_____

[13] DEKK also asserts that any ambiguities in the indenture should be construed against the drafter of the instrument, the Highway Commission.  However, there is no ambiguity in the indenture.

Moreover, the proposition that an ambiguity in a contract is construed against the drafter is not applied to all contracts regardless of the underlying facts.  When this proposition is applied, it is often to aid a party whose bargaining power is less than the draftsperson.  *Walters v. National Props., LLC*, 2005 WI 87, ¶14, 282 Wis. 2d 176, 699 N.W.2d 71.  Here, there is no basis in the record to conclude that the grantor was in a lesser bargaining power than the Highway Commission in 1961 in light of the fact that the indenture was entered into to satisfy an eminent domain claim under WIS. STAT. ch. 32, and that chapter gives substantial protections to property owners.  Put another way, there is nothing to show that the grantor had less ability than the Highway Commission to accept or reject any terms of the indenture.  Further, there is nothing to show that the grantor was not represented by counsel in regard to this transaction.  *See Omega Healthcare Invs., Inc. v. Lantis Enters., Inc.*, 256 F.3d 774, 777 (8th Cir. 2001) ("The rule that an ambiguity should be construed against the drafter is normally not applied in situations where the agreement has been reached through extensive negotiations and the parties are sophisticated and represented by counsel.").

meaning "limited highway easement" and asserts that the DOT has no access rights to its property based on those initials in the document. We decline to address this argument because it was not raised in the circuit court. *See City of Madison v. DHS*, 2017 WI App 25, ¶20, 375 Wis. 2d 203, 895 N.W.2d 844 (citing *Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177). In addition, DEKK's interpretation of that document cannot be reconciled with the unambiguous controlling language in the indenture which establishes the DOT acquired in 1961 "the Right of Access, including all existing future or potential common law or statutory easements or rights of access" to STH 50.

¶48 In sum, the DOT took all rights of access to STH 50 from the grantor through the 1961 indenture, and the grantor reserved only a temporary driveway connection subject to DOT regulations. Accordingly, the indenture authorizes the DOT to remove DEKK's driveway pursuant to DOT regulations, such as WIS. ADMIN. CODE § TRANS 231.03(2).

### C. No Compensation for the Driveway Closure.

¶49 DEKK is not entitled to compensation for the DOT's closure of the reserved driveway because the closure was accomplished through the DOT's authority under its police power. *Surety Sav. & Loan Ass'n*, 54 Wis. 2d at 443 ("[I]njury to property resulting from the exercise of the police power of the state does not necessitate compensation."). As explained earlier, the 1961 indenture reserved a point of access to STH 50 by means of one driveway in a specific location, subject to regulations that authorize the DOT to regulate or close the driveway under its police power. *National Auto Truckstops*, 263 Wis. 2d 649, ¶17 ("This section [§ 86.07(2) and WIS. ADMIN. CODE § TRANS 231.01] does not

deny the right of access but regulates access in the interests of public safety and convenience." (citation omitted)); *Mommsen*, 228 Wis. 2d at 638 ("The supreme court has held § 86.07(2), STATS., can be used to regulate access in the interests of public safety and convenience."); *see* WIS. ADMIN. CODE § TRANS 231.03(2). Thus, when the DOT notified DEKK that it was removing the driveway access to STH 50, the DOT was exercising the right it acquired through the indenture to remove the driveway pursuant to its police power authority under § TRANS 231.03(2). Because DEKK does not dispute that it retains "reasonable access" to STH 50 via its driveway to CTH H, the driveway closure is not a regulatory taking, and DEKK is not entitled to compensation for injury to its property caused by the DOT's exercise of police power. *See Surety Sav. & Loan*, 54 Wis. 2d at 443.

¶50    DEKK argues that the DOT did not properly exercise its police power when closing the driveway because the DOT did not provide any "notices of hearing" or make any findings that the removal of the driveway access would be necessary "in the interest of public safety, convenience and the general welfare." DEKK cites our supreme court's decisions in *Narloch* and *National Auto Truckstops* for the proposition that a condemnor cannot "attempt to take access without compensation, by simply relying on the existence of statutory police power, when the condemnor did not first properly exercise the police power, including all due process notice and hearing requirements." DEKK's reliance on these cases is misplaced. In each, our supreme court held that the exercise of a "duly authorized exercise of the police power" under WIS. STAT. § 32.09(6)(b) requires that the DOT employ the procedures set forth in Wisconsin's statutes that regulate highway access. *Narloch*, 115 Wis. 2d at 430-31; *National Auto Truckstops*, 263 Wis. 2d 649, ¶16. Because the DOT in each

case had not purported to act under these statutes, the court concluded that there was no "duly authorized exercise of the police power" and that the DOT must compensate for the loss of access. *Narloch*, 115 Wis. 2d at 431-32; *National Auto Truckstops*, 263 Wis. 2d 649, ¶¶16-17.

¶51 In the present case, however, the DOT exercised its police power authority when it asserted in its notice to DEKK of the driveway closure that it was closing the driveway pursuant to WIS. ADMIN. CODE § TRANS 231.03(2). This notice describes the standard set forth under § TRANS 231.03(2) and explains why DEKK's driveway impairs the safety and mobility of STH 50. The "due process notice and hearing requirements" identified by DEKK—*i.e.*, the notices of hearing and factual findings of necessity—do not pertain to § TRANS 231.03(2). Rather, those requirements pertain to WIS. STAT. § 84.25, the statute authorizing the DOT to designate highways as "controlled access."[14] DEKK does not identify any procedures under § TRANS 231.03(2) that the DOT failed to follow. Because the DOT determined that removing DEKK's driveway is necessary to avoid the "undue impairment of safety, convenience, and utility" of STH 50, we conclude that the DOT properly exercised its police power authority when closing DEKK's driveway under § TRANS 231.03(2). *See Surety Sav. & Loan*, 54 Wis. 2d at 443.

---

[14] DEKK appears to rely on our supreme court's decisions in *Hastings Realty Corp. v. Texas Co.*, 28 Wis. 2d 305, 315-16, 137 N.W.2d 79 (1965) and *Crown Zellerbach Corp. v. Department of City Dev. of City of Milwaukee*, 47 Wis. 2d 142, 152, 177 N.W.2d 94 (1970), for its contention that the DOT was required to hold hearings and make factual findings of necessity. However, in both of those cases, the court was referring to procedures set forth in WIS. STAT. § 84.25, not general procedures that the government must follow any time it exercises its police power. *See* § 84.25(1) ("The department is authorized to designate as controlled-access highways the rural portions of the state trunk system on which, *after traffic engineering surveys, investigations and studies, it shall find, determine and declare that the average traffic potential is in excess of 2,000 vehicles per 24-hour day*. Such designation of a portion of any state trunk highway in any county as a controlled-access highway shall not be effected until after a *public hearing* in the matter has been held …." (emphasis added)).

¶52    Therefore, the DOT is entitled to summary judgment because its actions in the present case do not constitute a taking of DEKK's right of access and because the DOT need not compensate DEKK for its exercise of police power which resulted in the loss of that access. *See Howell Plaza, Inc. v. State Highway Comm'n*, 92 Wis. 2d 74, 81, 284 N.W.2d 887 (1979) (holding that a property owner "is entitled to compensation only if the conduct of the [government] amounted to a taking or occupation of its property").

¶53    Accordingly, DEKK's eminent domain claim fails regardless of whether it was properly brought as a "right-to-take" action.[15]  It is immaterial whether DEKK should have brought its claim as a "right-to-take" or "just compensation" action under WIS. STAT. § 32.05.  Either route fails because there was no eminent domain taking of DEKK's right of access.

---

[15] WISCONSIN STAT. § 32.05 provides two methods for landowners to challenge a condemnation once damages have been awarded:  (1) a "right-to-take" action under § 32.05(5); or (2) a "just compensation" action under § 32.05(9)-(12).  *Christus Lutheran Church of Appleton v. DOT*, 2021 WI 30, ¶23, 396 Wis. 2d 302, 956 N.W.2d 837. "A right-to-take action … is used 'to contest the right of the condemnor to condemn the property described in the jurisdictional offer, for any reason other than that the amount of compensation offered is inadequate' and is the 'only manner in which any issue other than the amount of just compensation … may be raised pertaining to the condemnation of the property described in the jurisdictional offer.'" *Id.* (quoting § 32.05(5)).  "The second method, a just compensation proceeding, is 'when a property owner challenges the amount of compensation in a just compensation trial *after* an award of damages has been recorded.'" *Id.* (quoting *Otterstatter v. City of Watertown*, 2017 WI App 76, ¶35, 378 Wis. 2d 697, 904 N.W.2d 396); Sec. 32.05(9)-(12).  A just compensation proceeding "is not a challenge to the right of the party to condemn under § 32.05(5), but is directed to defects in the procedure for determining just compensation under WIS. STAT. § 32.09." *Otterstatter*, 378 Wis. 2d 697, ¶36.

**CONCLUSION**

¶54    For the foregoing reasons, the order of the circuit court is reversed and this matter is remanded to the circuit court to enter an order granting summary judgment in favor of the DOT.[16]

> *By the Court.*—Order reversed and cause remanded with directions.
>
> Not recommended for publication in the official reports.

---

[16] To the extent that the circuit court's order regarding the temporary injunction is still in place, that order is also reversed.