Timothy FROMM, Elizabeth Fromm, Amber Fromm, Ashley Fromm, Allie Fromm, Donald Kubenik, Darlene Kubenik, Keystone Investments, LLC, Thomas Pekar, Kristine Pekar, Stephen P. Reuther, Vickie T. Reuther and Midwest Land Company, Inc., Plaintiffs-Appellants,†

v.

VILLAGE OF LAKE DELTON, Defendant-Respondent.

Court of Appeals

*No. 2013AP14. Oral argument October 9, 2013. —Decided April 3, 2014.*

2014 WI App 47

(Also reported in 847 N.W.2d 845.)

† Petition for Review filed.

30

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Kim Grimmer* of *Solheim Billing & Grimmer, S.C.*, Madison. There was oral argument by *Kim Grimmer*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Ted Waskowski* and *Meg Vergeront* of *Stafford Rosenbaum LLP*, Madison. There was oral argument by *Meg Vergeront*.

Before Blanchard, P.J., Sherman and Kloppenburg, JJ.

¶ 1. BLANCHARD, P.J. Thirteen residents of a subdivision (collectively, Fromm)[1] appeal a judgment and an order of the circuit court dismissing their claim and granting summary judgment to the Village of Lake Delton. Fromm brought a takings claim under the inverse condemnation statute, WIS. STAT. § 32.10 (2009–10),[2] and the takings clause of the Wisconsin Constitution, against the Village after sustaining the destruction of his real and personal property due to severe flooding and resulting erosion in June 2008. Before the circuit court and now on appeal, Fromm alleges that the Village unconstitutionally took his property without providing just compensation.

¶ 2. We conclude that, because the Village did not engage in any action that resulted in the destruction of Fromm's property, the Village did not take Fromm's property and is not liable to Fromm for compensation. We also reject Fromm's argument that a "per se" takings rule applies, even in the absence of proof of a specific, pertinent action by the Village. We therefore affirm the decision of the circuit court granting summary judgment in favor of the Village.

[1] The petitioners in this action are: Timothy, Elizabeth, Amber, Ashley, and Allie Fromm, Donald and Darlene Kubenik, Keystone Investments, LLC, Thomas and Kristine Pekar, Stephen and Vickie Ruether, and Midwest Land Company, LLC. We collectively refer to the petitioners as "Fromm," as if they are a single person, because neither side in this appeal points to any distinctions among the individual petitioners that matter for purposes of this appeal.

[2] All further references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

## BACKGROUND

¶ 3. The construction of a dam on Dell Creek, near its confluence with the Wisconsin River, created Lake Delton in 1927. As constructed, the dam's structure consisted of a poured concrete section and an earthen embankment section that extended 350 feet to the south of the concrete section. The Village of Lake Delton took over ownership of the dam in 1994, and from that time forward until the date of the alleged taking in 2008, the Village made no changes to the structural design of the dam.

¶ 4. Also as constructed in 1927, in addition to the earthen embankment, the dam's structure featured three "release mechanisms" to handle an influx of excess water: a principal weir spillway;[3] an emergency spillway; and three floodgates that opened to a maximum height of six feet. These original mechanisms remained in place and unchanged as of June 2008, except that in 2005 the Village mechanically altered the floodgates so that, at their point of maximum capacity, they opened to the lesser height of four feet.

¶ 5. Pertinent to the principal argument advanced by Fromm on appeal are facts bearing on the relative elevations of the dam and Fromm's property before the alleged taking. According to a 1993 report of the Wisconsin Department of Natural Resources (DNR), the dam's lowest point of elevation on the earthen embankment section of the dam was at all times relevant to this appeal 835.76 feet above mean sea level (MSL).

¶ 6. Fromm's property was located about one quarter of a mile from the dam, in a "saddle," or a "low point on the reservoir rim relative to the crest of the dam." According to a 2001 Federal Emergency Manage-

---

[3] A weir is a barrier across a river designed to alter water flow when needed.

ment Agency (FEMA) Flood Insurance Rating Map for the land abutting Lake Delton and a 2001 flood elevation study conducted by the Village's engineering firm, Mid-States Associates (MSA), and approved by the DNR in 2002, the elevation of Fromm's property was between 833.93 and 835.5 feet above MSL. This meant that prior to the alleged taking, the lowest point on the dam's structure was at a higher elevation than Fromm's property.

¶ 7. Over the period June 7–9, 2008, a series of unusually heavy and frequent rainstorms hit the Lake Delton area, causing the water level to rise in Lake Delton. As the lake rose, excess water flowed over the saddle on which Fromm's property was located, and eventually down to the Wisconsin River. The path of this excess water caused erosion that worked its way back up from the Wisconsin River to Lake Delton. As a result of this erosion, Fromm's residence and the land on which it was built, heavy in sand content, were swept down and into the river, completely or partially destroying all structures and taking away a substantial quantity of property. The water in Lake Delton never overtopped the dam. After the June 2008 flooding and related severe erosion, no water remained on Fromm's property. For the balance of this opinion, we refer to the flooding and erosion of Fromm's property resulting in the losses at issue as the flooding event.

¶ 8. Fromm filed a verified petition with the Village to commence proceedings for inverse condemnation pursuant to the inverse condemnation statute, WIS. STAT. § 32.10, based on his property loss caused by the flooding event. Fromm also filed a complaint against the Village initiating this action, alleging that the Village took his

property and seeking compensation under § 32.10 and the takings clause of the Wisconsin Constitution.[4]

¶ 9. The Village moved for summary judgment, arguing that it had not engaged in any action that would support a takings claim. The Village included in its summary judgment materials a report and deposition of an expert on water resources engineering whom Fromm had retained to review the events leading up to the flooding event. According to Fromm's expert, the June 2008 rainfalls and flooding were "inarguably" of a magnitude that would occur only once in more than 1000 years. Fromm's expert also opined that, based on his review of photographs, elevation records, and testimony, Fromm's property in advance of the flooding event was at a lower elevation than the lowest elevation of the dam by about one and a half feet (approximating the potential elevation differential suggested by the reports referenced above). As discussed in more detail below, Fromm's expert also opined that this elevation differential was what "allowed" the flow of water through the saddle that resulted in the flooding event.

¶ 10. The circuit court granted the Village's motion for summary judgment and dismissed Fromm's complaint, concluding that there were no genuine issues of material fact and that the Village was entitled to judgment as a matter of law on the grounds that the

---

[4] In his complaint, Fromm also alleged that the Village was liable for negligence, nuisance, and trespass as a result of the flooding event. Fromm appears to have abandoned those claims prior to the circuit court's decision on summary judgment, and in any event he has abandoned them on appeal.

Separately, after the flooding event, the State exercised its power of eminent domain to take what remained of Fromm's property and compensated Fromm for the full market value of that property. The State's exercise of eminent domain in regard to Fromm's property is not at issue in this appeal.

Village took no affirmative action that resulted in Fromm's losses. Fromm now appeals.

## STANDARD OF REVIEW

¶ 11. We review a circuit court's decision to grant summary judgment de novo, applying the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Id.* (quoting WIS. STAT. § 802.08(2)). We will uphold a circuit court's decision granting summary judgment unless the record shows a genuine issue of material fact or the moving party is not entitled to a judgment as a matter of law. *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶ 30, 236 Wis. 2d 435, 613 N.W.2d 142.

¶ 12. " 'Whether government conduct constitutes a taking of private property without just compensation is a question of law that this court reviews de novo.' " *Brenner v. New Richmond Reg'l Airport Comm'n*, 2012 WI 98, ¶ 35, 343 Wis. 2d 320, 816 N.W.2d 291 (quoted source omitted).

## DISCUSSION

¶ 13. Fromm makes two arguments on appeal as to why the circuit court erred in dismissing his complaint on summary judgment.[5] First, Fromm argues

---

[5] If Fromm intends to advance additional arguments, they are not developed. We have found it a challenge to discern Fromm's core arguments, in part because he lays out a lengthy

that actions of the Village caused the flooding event and, thus, the Village must compensate him under the takings clause of the Wisconsin Constitution and the inverse condemnation statute. Second, Fromm argues in the alternative that, whether or not he can point to proof of specific Village action, this court "should find a per se taking under the facts of this case." As we understand the second argument, Fromm contends that we should apply the following as a per se rule: any time a governmental unit controls a dam and there is a loss of private property due to flooding associated with the dam's operation, the governmental unit is liable for a taking.[6]

¶ 14. The Wisconsin Constitution and the United States Constitution, made applicable to the states through the Fourteenth Amendment, provide that the government may not "take" a person's private property for public use without providing just compensation. *See* U.S. CONST. amend. V; *Dolan v. City of Tigard*, 512 U.S. 374, 383–84 & n.5 (1994); WIS. CONST. art. I, § 13 ("The property of no person shall be taken for public use without just compensation therefor."). When determin-

___

statement of facts in his principal brief that includes extensive references to facts that, in the end, appear unrelated to his arguments on appeal. To cite one of numerous examples, Fromm explains at length that the Village was not a part of FEMA's flood insurance program and, thus, Fromm was unable to obtain flood insurance for his property. However, so far as we can discern, Fromm never ties his inability to obtain flood insurance to any argument in the argument section of his brief.

[6] We need not, and do not, address the arguments of the parties as to a third issue, whether the statute of repose, WIS. STAT. § 893.89, protects the Village from liability for a taking because we conclude that the Village did not take Fromm's property.

ing whether a taking has allegedly occurred under the Wisconsin Constitution, this court applies the same standards that are used to determine whether a taking has occurred under the Fifth Amendment to the United States Constitution. *See Wisconsin Med. Soc'y, Inc. v. Morgan*, 2010 WI 94, ¶ 38, 328 Wis. 2d 469, 787 N.W.2d 22. Where a taking has allegedly occurred but a property owner has not been compensated, the property owner may initiate a claim for inverse condemnation pursuant to Wɪs. Sᴛᴀᴛ. § 32.10 in order to recover just compensation under the takings clause. *See Brenner*, 343 Wis. 2d 320, ¶¶ 41–43; *see also Hillcrest Golf & Country Club v. City of Altoona*, 135 Wis. 2d 431, 435 n.1, 400 N.W.2d 493 (Ct. App. 1986).

■ ■

¶ 15. Turning to the issue that we conclude is dispositive, in order to constitute a taking, the property loss at issue must be the result of government action. *Brenner*, 343 Wis. 2d 320, ¶ 83 ("[G]overnment action of some sort is a prerequisite for a taking under the constitution."); *Arkansas Game & Fish Comm'n v. United States*, 133 S. Ct. 511, 522 (2012) ([R]elevant to the takings inquiry is the degree to which the invasion is intended or is the foreseeable *result of authorized government action.*") (emphasis added). Two types of government action can result in a taking: "(1) 'an actual physical occupation' of private property or (2) a restriction that deprives an owner 'of all, or substantially all, of the beneficial use of his [or her] property.' " *E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist.*, 2010 WI 58, ¶ 22, 326 Wis. 2d 82, 785 N.W.2d 409 (quoted source omitted). There are no restrictions at issue here, and therefore Fromm's claim is based on the first type of taking.

## *I. Action of the Village*

¶ 16. Fromm's briefing is unclear in defining the alleged action or actions of the Village that form the basis for his takings claim. At oral argument to this court, Fromm clarified his position that there were two potential sources of Village action that constituted a taking: (1) mechanically limiting the dam's floodgates so that they could open to a maximum height of four feet, instead of six feet; and (2) failing to act on information that Fromm's property was located at a lower elevation than the dam's lowest point of elevation.[7] We conclude that neither of these alleged actions supports a reversal of the circuit court's decision on summary judgment.

¶ 17. Addressing the first alleged action of the Village, the reduction in floodgate capacity, we conclude that this cannot form the basis for reversing the circuit court's decision on summary judgment because Fromm fails to point to evidence on this topic creating a genuine issue of material fact. More specifically, Fromm fails to point to evidence in the record on summary

---

[7] In his briefing, Fromm also makes references to a number of other Village actions taken during the days leading up to and during the heavy rains that he may mean to argue formed the basis for his takings claim, such as failure to keep the spillway clear of debris during the flooding event and placing sandbags around the dam, but not around Fromm's property. However, Fromm fails to develop any of these additional alleged actions into an argument to support his takings claim. Moreover, at oral argument, when questioned on the subject of alleged Village action, Fromm did not state that these were Village actions on which he based his takings claim. Further, Fromm points to no evidence in the record that, had the Village kept the spillway clear or sandbagged his property, the flooding event would not have occurred.

judgment that, if the floodgates had been capable of opening to six feet, doing so would have prevented the flooding event.

¶ 18. As explained in the background section, the evidence on summary judgment included the deposition of Fromm's expert in water resources engineering and a report that this expert had prepared for this case. Fromm's expert stated in this report and at his deposition that the cause of the flooding event was a dam design issue, namely, that the lowest elevation point of the dam was higher than the elevation of Fromm's property. This expert opined that, even if the floodgates could have been opened to six feet, doing so during the flooding event would not have prevented Fromm's property loss.

¶ 19. Fromm conceded at oral argument that his expert opined that opening the flood gates to six feet would not have prevented the flooding event. Nonetheless, we understand Fromm to argue that a factual dispute remains. Fromm's argument proceeds as follows:

- Fromm's expert's opinion that opening the floodgates to six feet would not have prevented the flooding event was premised on the assumption that the rains were so heavy that they would be expected to occur only once in more than *1000 years*.

- However, in an MSA study subsequent to the flooding event, MSA concluded that the rains were not so massive, and would be expected to occur approximately once every *286 years*, thus raising a factual question about the more than 1000–year-flood premise relied upon by Fromm's expert in addressing the floodgates issue.

41

¶ 20. One problem with Fromm's argument, a problem sufficient to resolve this issue, is that the summary judgment materials contain only one expert opinion on the question of whether the lower floodgate height contributed to the flooding event, and that expert concluded that the rains were "inarguably" so heavy as to constitute a greater than 1000–year event. Fromm's reliance on a different source of authority alleging that the flooding event may have been of the lesser 286 year magnitude does not help him, because that source does not purport to allege that, at this lesser magnitude, the limited capacity of the floodgates caused the flooding event. As Fromm acknowledged at oral argument, he can point to no evidence in the record upon which we could conclude that there is a genuine, material dispute about whether the "action" of adjusting the gates to the lower capacity caused the flooding event.

¶ 21. We turn now to Fromm's second argument that Village action resulted in a taking, which is based on the failure by the Village to take some action related to the dam after learning that Fromm's property was situated up to two feet lower than the lowest elevation point of the dam, in a saddle. We understand Fromm's argument to proceed as follows: The Village learned well in advance of the flooding event that the lowest point on the dam was at a higher elevation than Fromm's property; the Village "acted" by deciding not to take steps or by avoiding necessary steps to prevent the flooding event based on its knowledge of this difference in elevation; because the Village's failure to act on this knowledge is an action that supports a takings claim,

the Village was not entitled to summary judgment as a matter of law. For the following reasons, we reject this argument.

¶ 22. In the argument section of his briefing, Fromm does not explicitly argue that the Village knew of the elevation differential between the lowest point of the dam and Fromm's property prior to the flooding event. At oral argument, the Village asserted that there were no facts in the record to support the claim that the Village had this knowledge. However, we conclude that the most efficient way to resolve this issue is to assume, without deciding, that there is record support for the proposition that the Village had available to it before the flooding event information showing the relative elevations of the dam and Fromm's property. Further, we also assume without deciding that the Village was on notice that a flood sufficient to raise the level of the lake to the lowest point of the dam would flood the saddle area, to a greater or lesser degree. We simply observe that, without acknowledging the fact, Fromm seems to have assumed the following in briefing and at oral argument: that the Village was on notice before the flooding event that there were no *other* locations on the reservoir rim that were significantly lower than the saddle area, nor other features of the terrain or landscape that would have pointed away from the saddle area as a potential flooding area.

¶ 23. Even with all these assumptions, however, we agree with the Village that the failure to act on this information cannot form the basis for Fromm's takings claim. Our conclusion rests in part on federal authority cited by the Village, as well as Wisconsin precedent cited below, requiring a valid takings claim to include allegations of affirmative government action. *See, e.g., Nicholson v. United States*, 77 Fed. Cl. 605, 619–20

(Fed. Cl. 2007); *Valles v. Pima Cnty.*, 776 F. Supp. 2d 995, 1003 (D. Ariz. 2011) ("Plaintiffs have not cited any authority to suggest that a government's *inaction or omissions* can amount to a taking, and this Court is not aware of any such case law.") (emphasis in original).

¶ 24. In *Nicholson*, the court addressed whether the government's failure to adequately design, build, or maintain levees in the New Orleans area before Hurricane Katrina could constitute a taking. 77 Fed. Cl. at 606. The court opined that "an affirmative action on the part of the Government [is necessary to] form the basis of the alleged taking." *Id.* at 620. The court stated, further, that "[i]n no case that we know of has a governmental agency's failure to act or to perform its duties correctly been ruled a taking." *Id.* The court's conclusion that the plaintiffs' takings claims failed turned, in part, on the conclusion that the plaintiffs' allegations of the government's failure to act to a particular degree were insufficient to support a takings claim. *Id.* at 619–20.

¶ 25. In his reply brief, Fromm attempts to distinguish *Nicholson* from the facts here by quoting the following passage from *Nicholson*: "Plaintiff's case would be stronger if the floodwalls *as designed* channeled the flood waters toward their property or had a net effect of increasing the level of flooding . . . . That case may ultimately pose a takings scenario." *Id.* at 622. Fromm asserts: "In this case, the dam as designed and improperly maintained had the net effect of channeling increased amounts of water towards the plaintiffs' property and increasing the level of flooding at their property."

¶ 26. Fromm's attempt to distinguish *Nicholson* suffers from two defects. First, as explained above, the Village did not design the dam structure and, thus, even

if the relative elevations of Fromm's property and the dam might have acted to, in some sense, "channel" the excess water toward Fromm's property, there is no relevant action of the Village on which to base a takings claim. Second, Fromm does not explain how the Village improperly maintained the dam in a manner that in any sense channeled water toward Fromm's property in the event of flooding. If Fromm means to point to the limitation of floodgate capacity, we have already explained that Fromm has failed to produce evidence that this action resulted in his property loss.

¶ 27. Fromm also asserts that the Wisconsin supreme court's recent decision in *Brenner* supports his argument that the Village's " 'failing to act' in some fashion so as to prevent or mitigate the flooding" supports a takings claim. We disagree. *Brenner* is highly distinguishable in its facts from this case.

¶ 28. In *Brenner*, a city took the following action: it extended by 1500 feet the runway of an airport that a city operated. 343 Wis. 2d 320, ¶ 6. As part of this action, the city acquired 62 acres of privately owned, abutting property by direct condemnation and acquired a 3.813 acre "avigation easement" over two parcels containing a personal residence and dairy barn. *Id.* The owners of this property asked the city to condemn their entire 142.5 acres, but the city declined to do so. *Id.*

¶ 29. The supreme court was presented with allegations that airplane flight patterns over the land that the city had declined to condemn constituted a taking of property without just compensation. *Id.*, ¶¶ 1, 6, 14. Evidence in the case included testimony of the city's airport manager that, while the city sought to enforce FAA-recommended approach patterns, "pilots would deviate from those standards, especially in high winds,"

and would "regularly" fly over the property at issue. *Id.*, ¶ 84. On these facts, the court concluded that there was a taking, because the city's "creation and expansion" of its airport resulted in aircraft flying over the landowner's property "low enough and with sufficient frequency to have a direct and immediate effect on the use and enjoyment of the property." *Id.*, ¶¶ 88, 90.

¶ 30. Fromm focuses on the following passage from *Brenner*:

> The City bears responsibility if aircraft are regularly deviating from FAA flight patterns and those deviations result in invasions of the . . . airspace [above] neighboring property owners with adverse effects on their property. The City is in a far superior position to enforce the FAA's flight standards than the property owners.

*Id.*, ¶ 84. Fromm argues, from this language, that

> [T]he [*Brenner*] court held that where a City failed to act to reduce the impact of physical invasions of the plaintiffs' property by private pilots, that failure to act could be government action. Similarly, in this case the Village was in a superior position to take action to prevent the physical invasion of [Fromm's] land from floodwaters resulting from heavy storms.

¶ 31. This argument misconstrues *Brenner*. The court's point about the city's "superior position" appears to have been directed toward an argument of the city to the effect that the flights over the plaintiffs' property were out of the control of the city. The court's response to this point was to explain that the city had taken the actions of designing, building, and operating the airport in a manner that caused the complained of overflights on a "regular" basis. There is no parallel to the facts of the instant case.

¶ 32. Moreover, as the Village points out and we have already noted above, the court in *Brenner* explicitly stated the rule that "government action of some sort is a prerequisite for a taking under the constitution." *Id.*, ¶ 83. We are not free to disregard this plainly stated rule and search for *inaction* that might be considered to be the functional equivalent of action, as might be at issue for example in the negligence context.

¶ 33. In sum, Fromm fails to present any legal authority to persuade us that the type of failure to act alleged here, namely, the Village's failure to act on knowledge about the relative elevations of Fromm's property and the dam, constitutes an action that can support his takings claim.[8]

---

[8] Having concluded that there was no taking because Fromm can point to no act of the Village that caused a taking, we need not address the arguments of the parties on the sub-issue of "temporary" flooding. A temporary flooding can involve complete destruction of property that nonetheless leaves no water behind. The Village argues that "temporary" flooding is not actual physical occupation of private property and, thus, cannot constitute a taking. *See Anhalt v. Cities and Villages Mut. Ins. Co.*, 2001 WI App 271, ¶¶ 28–33, 249 Wis. 2d 62, 637 N.W.2d 422 (temporary flooding was not a taking, even where residential property was destroyed due to flooding), *abrogated on other grounds by Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶ 59 n.17, 277 Wis. 2d 635, 691 N.W.2d 658; *see also Menick v. City of Menasha*, 200 Wis. 2d 737, 742–44, 547 N.W.2d 778 (Ct. App. 1995). Fromm responds that "temporary" flooding can amount to a taking. On this subject we simply observe that, seemingly contrary to *Anhalt* and *Menick*, the United States Supreme Court recently decided that "temporary" flooding can, under certain circumstances, amount to a taking. *Arkansas Game and Fish Comm'n v. United States*, 133 S. Ct. 511, 519–23 (2012); *see also Quebedeaux v. United States*, 112 Fed. Cl. 317, 321 (Fed. Cl. 2013).

## II. Per Se Taking

¶ 34. Fromm also argues that, even if we fail to identify a specific action by the Village that caused the flooding event, we should follow, or now fashion, a rule that the facts before us amount to a per se taking. Counsel for Fromm stated at oral argument: "[T]he mere fact that the dam was placed across a navigable waterway which served to pond the lake makes the government responsible for any consequential significant property damage that flows from the water not being controlled in that lake." Counsel expanded on this concept by explaining his view that the Village's operation and maintenance of the dam created a de facto "flowage easement" across Fromm's property that, as a result of the flooding event, must be compensated as a taking.

¶ 35. Fromm fails to cite to any authority to support his proposition that, by operating a dam designed and created by others, a governmental unit becomes strictly liable in the takings context for all flooding associated with the dam. To the contrary, in each of the cases Fromm cites to support this argument, the governmental unit involved undertook some form of action alleged to have caused the flooding said to constitute a taking. *See generally, e.g., United States v. Dickinson,* 331 U.S. 745 (1947) (government had to compensate property owner for erosion resulting from government *damming of a river*); *Owen v. United States,* 851 F.2d 1404 (Fed. Cir. 1988) (Corps of Engineers *dredging of a river,* resulting in erosion and a house falling into that river, was a taking); *Quebedeaux v. United States,* 112 Fed. Cl. 317 (Fed. Cl. 2013) (Corps of Engineers *opening of a spillway* during flooding event, resulting in flooding of plaintiffs' properties,

48

could support a takings claim); *Cotton Land Co. v. United States*, 109 Ct. Cl. 816 (Ct. Cl. 1948) (governmental unit *that built a dam* had to compensate plaintiff when, due to the damming, the river flow rate slowed and silt built up, eventually resulting in flooding of plaintiff's property).

¶ 36. Further, even putting aside the lack of authority, Fromm fails to provide a convincing rationale to support the creation or application of a per se rule when it comes to dams and flooding, which would appear on its face to contravene the general requirement, discussed above, that there can be no taking without a causal government action. The closest he comes is to assert that the taxpayers should, in all fairness, compensate victims of flooding associated with government-operated dams where a dam remains standing and in contrast affected property owners suffer heavy losses. While this rationale has appeal where the government acted in a manner that took an individual's property for the good of the public, Fromm fails to explain how this rationale supports a per se rule in the instant case, where he can identify no government action that caused the property loss.

¶ 37. In sum, Fromm has failed to provide either legal authority or a viable rationale tied to pertinent legal principles to support his argument that the flooding event constituted a per se taking.

## CONCLUSION

¶ 38. For the forgoing reasons, we conclude that the Village did not act in a manner that unconstitutionally took Fromm's property, and we reject Fromm's request that we apply or create a per se rule in the

instant case. We therefore affirm the decision of the circuit court granting summary judgment in favor of the Village and dismissing Fromm's action.

*By the Court.*—Judgment and order affirmed.