COURT OF APPEALS
DECISION
DATED AND FILED

February 22, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP2320**

Cir. Ct. No.  **2017CV320**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

DESTINEY KASHIA XIONG,

   PLAINTIFF-RESPONDENT,

 V.

SECURITY NATIONAL LIFE INSURANCE COMPANY,

   DEFENDANT-APPELLANT.

APPEAL from orders of the circuit court for Dunn County: JAMES M. PETERSON, Judge. *Order affirmed; order reversed and cause remanded for further proceedings*.

Before Stark, P.J., Hruz and Nashold, JJ.

¶1 NASHOLD, J. This interlocutory appeal[1] involves an insurer's fraud defense to claims for death benefits under life insurance policies, with some unusual twists. Security National Life Insurance Company (Security) issued two life insurance policies to its own insurance agent, Destiney Kashia Xiong (Destiney), insuring the life of Wang Y. Xiong (Wang), a man Destiney claims was her father. When Wang died, Security denied Destiney's claims and attempted to rescind the policies, but it did not then allege that Destiney had committed any fraud. Destiney sued for breach of contract and various torts. Security attempted to plead a fraud defense based on circumstances it claims to have learned of after Wang's death—including that Wang was not Destiney's father and that he was unaware the policies were even issued.

¶2 The circuit court granted partial summary judgment to Destiney on her breach of contract claim because it determined that Security did not comply with statutory notice requirements before attempting to rescind the policies. *See* WIS. STAT. § 631.11(1)(b), (4)(b) (stating that an insurer must, within specified time frames, notify the policyholder that the insurer intends to rescind or defend against a claim on the basis of fraud). We conclude that, under these circumstances, Security's initial (allegedly improper) attempt to rescind the policies and deny Destiney's claims does not impact its ability to subsequently raise a fraud defense. We further conclude that Destiney failed to set forth a prima facie case for why Security did not meet the notice requirements of § 631.11(4)(b) when asserting its fraud defense. Accordingly, we reverse the order granting

---

[1] This court granted Security National Life Insurance Company's petitions for leave to appeal pursuant to WIS. STAT. RULE 809.50(3) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Destiney's motion for partial summary judgment on her breach of contract claim, and we remand for further proceedings on all claims.

¶3    Security further appeals a circuit court order denying its motion to bifurcate Destiney's contract and tort claims for purposes of trial. We conclude that the court did not erroneously exercise it discretion in ordering a consolidated trial. Accordingly, we affirm that order.

## BACKGROUND

¶4    The following material facts are undisputed. In 2016, while Destiney was employed as a Security insurance agent, she applied for and was issued two Security policies, together insuring Wang's life for $35,000. The policies are materially identical except as to their benefit amounts, so we discuss them together.[2]

¶5    For each policy, Destiney is the policyholder and beneficiary. The applications (incorporated into the policies) state that Destiney is Wang's child; that they share an address in Eau Claire, Wisconsin; and that Wang does not have any of the medical conditions listed on the applications. The applications contain Wang's and Destiney's electronic signatures as applicant and policyholder, respectively, and are "[d]ated at" Eau Claire, Wisconsin, indicating that Wang and Destiney signed them there. Destiney, as a licensed Security insurance agent, also electronically signed the "Agent's statement," certifying:

---

[2] The first Security policy, issued April 8, 2016, insures Wang's life for $20,000. The second policy, issued August 16, 2016, insures Wang's life for $15,000.

3

1.  I correctly asked all the Medical Questions in this application and correctly recorded all the answers given; and

2.  All answers given in this application are true and complete; and

….

4.  The signature of the proposed insured(s) … is what they are represented to be and were signed in my presence; and

5.  I know of no factor affecting the insurability of the proposed insured(s) except as stated in this application.

¶6     Wang died of a heart attack in February 2017, less than a year after the policies were issued.  In March 2017, Destiney submitted claims for the death benefits under the policies.  By letter dated December 14, 2017 (the December 2017 letter), Security informed Destiney that it was returning the premiums paid on the policies and not paying the death benefits, on the grounds that it lacked Wang's medical records.  The letter explains:

> [Security] requested medical records from doctors listed on the form provided by [Wang's] family, [and] no medical records were available for the period from March 2014—August 2016[,] which is 2 years prior to the [policies'] date[s] of issue.  This being a contestable claim there are no records to present for review by our Medical director to determine [Wang's] insurability at the time [the] policy was issued.
>
> … Should any new information be discovered[,] you can request that the claim be reopened and reviewed[.]

¶7     Destiney filed suit on December 21, 2017, and filed an amended complaint on December 26, 2017.  As pertinent here, the amended complaint asserted a breach of contract claim for $35,000.  In its February 13, 2018 answer,

4

Security raised several affirmative defenses, including that Destiney had "engaged in fraudulent conduct to procure the issuance of the policies."

¶8    Destiney brought a motion for summary judgment. She argued that Security could neither rescind the policies nor raise fraud as an affirmative defense because—based on Destiney's status as Security's insurance agent—Security had constructive knowledge of any misrepresentation involved in the policies' procurement. *See* WIS. STAT. § 631.11(4)(a) (providing that a misrepresentation made by or on behalf of a policyholder cannot constitute grounds for rescission of, or affect the insurer's obligations under, the policy if the insurer had constructive knowledge of the relevant facts when it issued the policy); WIS. STAT. § 631.09(1) (imputing to the insurer "any fact material to the risk or which breaches a condition of the policy" and known to the agent who transmitted the insurance application).

¶9    In its response, Security argued that, as a matter of law, misrepresentations by a person who is both an agent and a policyholder cannot be imputed to the insurer. Security also addressed some of the "suspicious circumstances" that formed the basis of its fraud defense. Referencing various discovery materials and Wang's death certificate (listing his residence in the State of Arkansas), Security argued that there were disputed material facts as to whether Wang was in fact Destiney's father; whether Wang lived in Wisconsin with Destiney; whether Wang was physically present with Destiney in Eau Claire when the applications were completed and submitted; and whether Wang had an undisclosed heart condition. According to Security, if it had known or suspected the above facts when Destiney submitted the applications, it either would not have issued the policies or would have made additional inquiries. Thus, it was Security's position that Destiney may have unilaterally acted as agent,

5

policyholder, and beneficiary to secure policies insuring a man who was not her father and who lacked any knowledge of the policies.

¶10     Security further represented that, over the course of its investigation, it had learned that Destiney had entered into a consent order in Minnesota revoking her Minnesota agent's license. That order was based on allegations that, while an agent, Destiney "sold a life insurance policy, which was delivered, signed, dated and finalized on the date the insured passed away" and that she had entered into an agreement with her client—the surviving spouse of the insured—to split the death benefit proceeds.

¶11     The circuit court denied Destiney's motion for summary judgment, determining that any knowledge of fraud on Destiney's part could not be imputed to Security. Destiney then filed a second amended complaint reasserting her breach of contract claim, adding various tort claims (including for bad faith), and seeking punitive damages. Security reasserted its fraud defense in its answer.[3] Security moved to bifurcate the contract and tort claims. The circuit court denied that motion.

¶12     The case proceeded to pretrial motions, at which time Destiney moved in limine to prohibit Security "from referring, alleging or implying that [she] committed fraud, misrepresentation, dishonesty, breach of fiduciary duty and/or other misconduct in applying for the life insurance policies on the grounds that [Security] completely failed to comply with" statutory notice requirements.[4]

---

[3] It is unclear from Security's answer whether its fraud defense was intended to apply only to Destiney's breach of contract claim or whether it also extended to Destiney's tort claims.

[4] Destiney additionally argued that Security did not comply with a provision of the Wisconsin Administrative Code, but she has since abandoned that argument.

*See* WIS. STAT. § 631.11(4)(b) (once the insurer learns of "sufficient facts to constitute grounds for rescission of the policy … or a general defense to all claims under the policy," it must notify the insured, within specified time frames, of its intent to rescind or defend). Although somewhat difficult to discern, we construe Destiney's argument to be that, because Security did not provide the statutorily required notice of its intent to rescind prior to sending the December 2017 letter, Security was barred from later raising fraud as an affirmative defense.

¶13 The circuit court agreed with Destiney's position and determined that Security was statutorily barred from raising fraud as an affirmative defense. This determination also caused the court to reverse its earlier ruling denying Destiney's summary judgment motion, given that, without the fraud defense, Security no longer had any viable defense to the contract claim. The court entered an order granting summary judgment on Destiney's breach of contract claim and awarding Destiney $35,000, plus costs and interest.

¶14 We granted Security's leave to appeal the circuit court orders: (1) granting partial summary judgment to Destiney on her breach of contract claim; and (2) denying Security's motion to bifurcate Destiney's contract and tort claims. The court stayed proceedings related to Destiney's tort claims, pending the outcome of this appeal. We will discuss further facts below where relevant to our analysis.

## DISCUSSION

### I. Standards of Review

¶15 We review a circuit court's order on summary judgment de novo, applying the same methodology as the circuit court. ***Fromm v. Village of Lake***

*Delton*, 2014 WI App 47, ¶11, 354 Wis. 2d 30, 847 N.W.2d 845. A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). The movant has the initial burden of showing the absence of genuine issues of material fact, at which point, the burden shifts to the respondent to "set forth specific facts showing that there is a genuine issue for trial." Sec. 802.08(3); *Central Corp. v. Research Prods. Corp.*, 2004 WI 76, ¶19, 272 Wis. 2d 561, 681 N.W.2d 178.

¶16     This appeal requires us to interpret and apply several insurance statutes. Statutory interpretation presents a question of law that we review de novo. *Teschendorf v. State Farm Ins. Cos.*, 2006 WI 89, ¶9, 293 Wis. 2d 123, 717 N.W.2d 258. Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. If the statute's meaning is plain, our inquiry ordinarily ends. *Id.* "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46.

¶17     We review the circuit court's denial of a motion to bifurcate for an erroneous exercise of discretion. *See Dahmen v. American Fam. Mut. Ins. Co.*, 2001 WI App 198, ¶11, 247 Wis. 2d 541, 635 N.W.2d 1.

*II.  Summary Judgment Was Inappropriate on Destiney's Contract Claim.*

A.  <u>Destiney did not set forth a prima facie case that Security failed to comply with the notice requirements of WIS. STAT. § 631.11(4)(b)</u>.

¶18     The circuit court granted summary judgment on Destiney's breach of contract claim based on Security's failure to comply with the notice requirements of WIS. STAT. § 631.11(4)(b).  That paragraph states:

> If after issuance of an insurance policy an insurer acquires knowledge of sufficient facts to constitute grounds for rescission of the policy under this section or a general defense to all claims under the policy, the insurer may not rescind the policy and the defense is not available unless the insurer notifies the insured within 60 days after acquiring such knowledge of its intention to either rescind the policy or defend against a claim if one should arise ….

Sec. 631.11(4)(b).[5]  Although § 631.11(4)(b) concerns notice to "the insured," that term encompasses "any person to whom or for whose benefit an insurer makes a promise in an insurance policy," including a policyholder and beneficiary.  WIS. STAT. § 600.03(26).  As stated, Destiney is both a policyholder and a beneficiary.

¶19     In determining that Security did not comply with WIS. STAT. § 631.11(4)(b), the circuit court appears to have concluded that Security was barred from raising a fraud defense because Security did not provide notice of its intent to rescind the policies prior to sending the December 2017 letter.  On appeal, Security argues that its sending the December 2017 letter has no bearing on its legal capacity to later plead a fraud defense—the grounds for which, it contends, it did not discover until *after* Destiney commenced her lawsuit on

---

[5]  As quoted above, WIS. STAT. § 631.11(4)(b) applies only where the insurer seeks to assert "a general defense to all claims under the policy."  For purposes of this appeal, we assume that Security's fraud defense is such a "general defense."

December 21, 2017.  Security further asserts that its February 13, 2018 answer functions as statutory notice, in that Security filed the answer within sixty days of "acquiring … knowledge" of "sufficient facts to constitute … a [fraud] defense."[6]

---

[6] Security also argues that, pursuant to ***WHEDA v. Verex Assurance***, ***Inc.***, 166 Wis. 2d 636, 480 N.W.2d 490 (1992), the notice requirements of WIS. STAT. § 631.11(4)(b) do not apply because Security did not acquire knowledge of sufficient facts to constitute grounds for rescission of the policy until after the loss occurred—here, the death triggering the obligation to pay life insurance proceeds.  *See* ***WHEDA***, 166 Wis. 2d at 648 ("[W]here the loss occurred prior to [the insurer]'s having obtained knowledge of any misrepresentations, [§] 631.11(4) does not apply.").  Because we decide the notice issue in Security's favor on other grounds, we do not address Security's argument based on the language of ***WHEDA***.  *See* ***Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

In addition, Security appears to contend that WIS. STAT. § 631.11 does not apply where the allegation is that an insurance agent committed fraud to secure a policy for herself.  Thus, Security argues that "§ 631.11 does not apply where the alleged misrepresentations were made by the agent of the insurer" and that "§ 631.11 does not apply in this case because the misrepresentations were made by the agent of the insurer, acting in her multiple capacities as agent, and proposed owner of the policy, beneficiary, and payor of premiums."  Security notes that § 631.11(1)(b), which sets forth conditions for an insurer's rescission based on misrepresentation, applies where the misrepresentation is "made by a person other than the insurer or an agent of the insurer" in the negotiation for an insurance contract.  Security appears to advance an interpretation of para. (1)(b) that would allow it to rescind a policy issued to its own agent without meeting the conditions of that paragraph.

To the extent Security raises these arguments solely to challenge the circuit court's determination on the notice issue, again, we do not need to address them given our holding in Security's favor on that issue.  *See* ***Barrows***, 352 Wis. 2d 436, ¶9.  It is also possible that Security may mean to argue that Destiney (as agent) should not be allowed to participate in her own fraud (as policyholder).  We address this point in Section II.B, in which we analyze Destiney's argument that Security is barred from raising a fraud defense because it had constructive knowledge of the fraud.  *See* WIS. STAT. § 631.11(4)(a); WIS. STAT. § 631.09(1), (4).  However, because the scope of these arguments is unclear, and because Security may seek to argue on remand that the consumer protection provisions of § 631.11 are inapplicable under the circumstances present here, we note that this argument is unpersuasive.  It would be absurd, and therefore contrary to canons of statutory construction, to interpret the "other than the insurer or an agent" language of § 631.11 as exempting an insurer from compliance with consumer protection provisions whenever it issues a policy to its own agent (or whenever it alleges fraud in the negotiation or procurement of such policy).  *See* ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110.

¶20 For purposes of this appeal, we assume that the December 2017 letter was an improper attempt to rescind the policies. Security approved the applications and issued the policies without the benefit of Wang's medical records, and it has not explained why rescission was permissible upon its later determining that these records were necessary but unavailable.[7] It does not follow, however, that Security's sending the December 2017 letter affects its ability to raise a fraud defense based on "suspicious circumstances" it claims to have learned about after it sent the letter.

¶21 WISCONSIN STAT. § 631.11(4)(b) provides two situations in which an insurer must give notice—when it wishes to rescind, and when it wishes to raise a general defense to all claims—but the statute does not condition either notice on the other. Thus, Destiney may or may not have a specific cause of action stemming from Security's sending the December 2017 letter, but she has failed to show why Security's subsequently asserted fraud defense is barred. Accordingly, we conclude that Security's attempted rescission has no bearing on its ability to assert a fraud defense.

¶22 We further conclude that Destiney failed to establish sufficient facts as to when Security learned of the fraud, so as to entitle her to summary judgment on the grounds that Security failed to comply with the sixty-day notice requirement of WIS. STAT. § 631.11(4)(b). Both below and on appeal, Destiney has not provided any facts or argument supporting the conclusion that Security

---

[7] WISCONSIN STAT. § 631.11 sets forth the grounds for rescission of an insurance contract. *See* § 631.11(1)(b) (rescission based on misrepresentation); § 631.11(3) (rescission based on failure of a condition prior to a loss or breach of promissory warranty). Security claims that it learned of the alleged fraud after it sent the December 2017 letter, and it has never argued grounds for rescission under § 631.11(3).

filed its answer over sixty days after it learned of the grounds for its fraud defense. *See* **Central Corp.**, 272 Wis. 2d 561, ¶¶18, 19 (moving party must establish "prima facie case for summary judgment" and "[t]he burden is on the moving party to prove that there are no genuine issues of material fact"). Instead, Destiney disputes "that the acquisition of knowledge triggers the notice"—an assertion that is belied by the text of § 631.11(1)(b) and leaves open the question of when, in her view, the clock starts running on this notice provision.

¶23 Destiney further argues that Security's notice "must be specific" and that Security's answer fails this requirement, in that it does not "notif[y] Destiney of the specific representations (or misrepresentations) [Security] contends are offensive and material." Destiney again misconstrues the statute. WISCONSIN STAT. § 631.11(4)(b) contains no "specificity" requirement and mandates only notice of the "*intention* to … defend against a claim." (Emphasis added.) Security's answer, pleading fraud as an affirmative defense, indisputably meets this requirement.

¶24 In sum, there is no legal impediment to Security's bringing a fraud defense. The fact that Security sent the December 2017 letter does not impact its ability to raise this defense. Moreover, Destiney did not set forth a prima facie case establishing that Security failed to comply with WIS. STAT. § 631.11(4)(b) notice requirements in raising this defense. Because Security raises a viable defense to Destiney's contract claim, the circuit court erred in granting her summary judgment on that claim.

B. Security did not have constructive knowledge of any alleged misrepresentations that Destiney made to procure the policies.

¶25    Destiney argues that Security cannot assert a fraud defense because Security had constructive knowledge of any misrepresentations she made to procure the policies.  This argument rests on the interplay of several provisions in our insurance statutes.  To explain, WIS. STAT. 631.11(1)(b) addresses how an insurer may rescind or avoid its contractual obligations because of a misrepresentation in the negotiation for or procurement of a policy.[8] Paragraph (1)(b) specifies that not all misrepresentations are grounds for rescission (for example, the insurer must make a threshold showing that the person making the misrepresentation "knew or should have known that the representation was false").  This paragraph applies to a misrepresentation made by a defined class of people—people "other than the insurer or an agent of the insurer"—and thus prevents an insurer from basing rescission on its own misrepresentation.

---

[8]  WISCONSIN STAT. 631.11(1)(b) provides, in full:

> No misrepresentation, and no breach of an affirmative warranty, that is made by a person other than the insurer or an agent of the insurer in the negotiation for or procurement of an insurance contract constitutes grounds for rescission of, or affects the insurer's obligations under, the policy unless, if a misrepresentation, the person knew or should have known that the representation was false, and unless any of the following applies:
>
> 1.  The insurer relies on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive.
>
> 2.  The fact misrepresented or falsely warranted contributes to the loss.

¶26    WISCONSIN STAT. § 631.11(4)(a) further protects a policyholder whose misrepresentation might ordinarily provide grounds for rescission or avoidance, where the insurer knew or should have known of the misrepresentation when it issued the policy. This paragraph provides that a misrepresentation cannot "constitute[] grounds for rescission of, or affect[] an insurer's obligations under, an insurance policy if at the time the policy is issued the insurer has either constructive knowledge of those facts under [WIS. STAT. § 631.09(1)] or actual knowledge." Section 631.09(1), in turn, generally imputes to the insurer "any fact material to the risk or which breaches a condition of the policy, if the agent who bound the insurer … or transmitted the application to the insurer knew it at the time the agent acted." Thus, the agent's knowledge becomes the insurer's knowledge, and the insurer is prohibited from issuing, collecting premiums for, and later repudiating a policy based on misrepresentations that the agent knew of all along.

¶27    As one might suppose, WIS. STAT. § 631.09(1) should not operate to permit an agent and policyholder *together* to misrepresent some material fact otherwise unknown to the insurer. Thus, § 631.09(4) provides that subsec. (1) does "not apply if the agent and the policyholder or insured acted in collusion to deceive or defraud the insurer."

¶28    Relying on WIS. STAT. §§ 631.11(4)(a) and 631.09(1), Destiney argues that Security had constructive knowledge of any alleged misrepresentations she made—and thus cannot avoid its contractual obligations—because her knowledge of the underlying facts must be imputed to Security. In contrast,

Security contends that § 631.09(4) must necessarily preclude the imputation of knowledge to the insurer where a dual agent/policyholder "colludes with herself."[9]

¶29    We conclude that WIS. STAT. § 631.09(4) applies where an agent who is also a policyholder (or insured) acts to deceive or defraud the insurer.  The plain purpose of subsec. (4) is to protect the insurer from its agent's malfeasance.  That purpose can only be carried out by construing subsec. (4) to extend to the unusual circumstances before us, concerning allegations that an agent fraudulently obtained a policy for herself as both policyholder and beneficiary.  Thus, where an individual acts in a dual capacity as both agent and policyholder to allegedly defraud the insurer, the "agent" may be considered to have "colluded" with the "policyholder."

¶30    Accordingly, WIS. STAT. § 631.09(4) prevents Destiney's knowledge of the alleged fraud from being imputed to Security.  Because Security did not have constructive (or actual) knowledge of any alleged misrepresentations, it may pursue its fraud defense on remand.

### III.  The Circuit Court Did Not Erroneously Exercise its Discretion in Denying Security's Motion to Bifurcate Contract and Tort Claims.

¶31    Security argues that the circuit court erroneously exercised its discretion in denying Security's motion to bifurcate Destiney's contract and tort claims for trial.  *See* WIS. STAT. § 906.11 (the circuit court "shall exercise reasonable control" over the trial); WIS. STAT. § 805.05(2) (the circuit court may

---

[9]  In raising this argument, Security refers us to the holding of an unpublished per curiam decision.  We remind appellate counsel that such reference is improper.  *See* WIS. STAT. RULE 809.23(3).

order a separate trial of any claim "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition or economy"). In deciding a motion to bifurcate, "the [circuit] court must consider the potential prejudice to the parties, the complexity of the issues, the potential for jury confusion and the issues of convenience, economy and delay." *Dahmen*, 247 Wis. 2d 541, ¶11. We will not reverse that decision "unless it is clearly shown that the [circuit] court failed to consider the relevant facts, apply the proper standard of law and reach a conclusion a reasonable judge could reach." *Id*.

¶32 According to Security, the circuit court incorrectly assumed that the contract and tort claims involved the same basic set of facts, and thus did not account for several countervailing considerations: (1) that evidence introduced in support of the tort claims would be irrelevant to Security's fraud defense; (2) that such evidence would unduly prejudice Security; (3) that such evidence would confuse the jury and "make it difficult for [it] to discern between the various claims"; and (4) that properly drafted jury instructions and a special verdict form could not cure these defects.

¶33 On review of the motion hearing transcript, however, it does not appear that the circuit court presumed that the contract and tort claims involved an entirely overlapping set of facts. Rather, the court viewed the *core* underlying facts as less complicated or complex than "many, many other cases that juries hear and have to decide." The court acknowledged the potential for prejudice, but it contrasted the instant case with those in which bifurcation might be required to prevent discovery abuses. Thus, in the court's view, consolidation would not result in extreme prejudice to Security.

¶34    In addition, the circuit court was mindful of judicial caseloads in Dunn County; in its view, "[w]e simply can't afford to have two jury trials on the same basic set of facts…. I can't imagine six or seven days on these facts." Destiney had further represented that it would be difficult to present certain witnesses twice: some required English translators, and one had a disability. The court appeared to take these factors into account, noting that the same witnesses were necessary to try both sets of claims. Giving weight to "judicial economy issues" and the relative simplicity of the case, the court declined to bifurcate.

¶35    Security has not shown that the circuit court's determination constituted an erroneous exercise of discretion. The court considered and rejected the general arguments Security now raises on appeal, and it did not rest its decision on any error of fact or law. It was not an erroneous exercise of discretion, for example, for the court to give greater weight to "judicial economy issues," where the court reasonably believed that the case before it was relatively noncomplex. Security states that it "is entitled to a bifurcated trial," but in fact, it is entitled only to a decision reasonably applying the relevant law to the relevant facts. *See Dahmen*, 247 Wis. 2d 541, ¶11. It received such a decision here.

¶36    Security further implies that the circuit court rested its decision on representations by Destiney that are no longer true, concerning the scope of presentation of her tort claims. Specifically, Destiney represented to the circuit court that she did not intend to call certain experts, but Security's believes that this is no longer the case. The proper remedy, however, is not for us to require bifurcated trials. Rather, should these new circumstances arise, the appropriate redress is for Security to raise any argument on this point in the circuit court. We defer to the circuit court's sound discretion on how to try these claims in the face of any new developments.

**CONCLUSION**

¶37 WISCONSIN STAT. § 631.11(4)(b) does not preclude Security from asserting a fraud defense to Destiney's claims, even given that Security's earlier attempt at rescission may have been improper. Moreover, Destiney failed to set forth a prima facie case establishing that Security did not comply with § 631.11(4)(b) notice requirements in raising this defense. Thus, Security is not barred under § 631.11(4)(b) from arguing fraud as a defense to its obligations under the policies. In addition, Destiney's knowledge of any fraud is not imputed to Security under WIS. STAT. § 631.09(4), which we construe to prohibit the imputation of knowledge to an insurer where a dual agent/policyholder essentially "colludes" with herself. Finally, the circuit court did not erroneously exercise its discretion in denying Security's motion to bifurcate Destiney's tort and contract claims for trial.

¶38 Accordingly, we reverse the order granting Destiney's motion for partial summary judgment on her contract claims and affirm the order denying Security's motion to bifurcate. We remand for further proceedings.

*By the Court.*—Order affirmed; order reversed and cause remanded for further proceedings.

Not recommended for publication in the official reports.